A92A0241. HORNEY et al. v. PANTER.
(420 SE2d 8)

Andrews, Judge.

Mr. and Mrs. Horney appeal the grant of summary judgment to Panter in their suit arising from an electrical accident in which Mr. Horney was seriously injured.

Viewed in favor of the Horneys' opposition to the summary judgment, OCGA § 9-11-56; *Eiberger v. West,* 247 Ga. 767, 769 (1) (281 SE2d 148) (1981), the undisputed facts were that Panter, an attorney, owned an apartment complex where Horney served as resident manager. Horney was a Navy enlisted man who worked on electrical avionics systems for aircraft. As part, of his training, he had taken courses, including basic electricity and one on Ohm's law, dealing with figuring out voltage, current, resistance, etc. While a teenager, Horney had assisted his father in building houses from the "ground up." He had pulled wiring and finished outlets as well as connected appliances. While working for his father, he had learned by watching the electrician on the jobs. While in the Navy before coming to Georgia, he had also served as resident manager for an apartment complex. As part of his duties there, he had replaced circuit breakers and added circuits to electrical systems. Also, he had remodeled a basement, turning a two-car garage into a family room and bedroom, including pulling all new wires and installing outlets. He was aware that, when working with electricity, one should never work on an energized system and that a current of .5 amperes could kill. Part of his avionics training and responsibilities involved working on electric powered computer systems. He was aware that a Navy technician had been killed on the job by coming in contact with a live system.

When he came to Georgia, Horney contacted the base housing office and presented letters of recommendation from his previous jobs as resident manager. He was referred to Panter who hired him, giving him an apartment rent free in exchange for his services. Panter had no experience in working with installation or repair of electrical systems. Horney took over the apartments about two months before his accident. Panter hired him partly due to Horney's assurances that he

could handle household maintenance and construction tasks, including wiring.

At Panter's home, a single family dwelling separate from the apartments, Horney had charged the air conditioning system and replaced an electrical socket. For jobs at his home, Panter paid Horney separately.

Panter was aware that Horney had installed an electrical fan in his own apartment and asked him if he would install one in Panter's home. Horney agreed to do so for $50.

During the installation process, Horney and Mrs. Panter attempted to ascertain which of the unlabelled electrical circuits controlled the bedroom where the fan was to be installed. Believing he had turned the circuit off, Horney began working. In order to install the fan, he had to run a new line into the ceiling and he was also going to rewire electrical outlets and switches in the room. He received a mild shock while working. After taking unspecified steps to correct this problem, he continued working and received a full shock and suffered severe neurological damage. When Panter entered the room in response to Horney's cry, the fan was on and operating.

Suit was filed against Panter, contending that Panter failed to exercise ordinary care by hiring an unqualified person to perform a dangerous activity and by hiring a non-licensed person to perform electrical contracting work, in violation of OCGA Title 43, Chapter 14. Horney further alleged, in Counts 2 and 3, that an oral agreement was made by Panter to pay him $1,000 a month or to take care of his financial needs in consideration of Horney not filing suit. The last count was for loss of consortium by Mrs. Horney.

Panter filed his motion for summary judgment on March 1, 1991, contending that he breached no legal duty to Horney because the electrical system in the house was not defective and Horney had knowledge that working on an energized system was dangerous. In support of this motion, the affidavit of electrical engineer Landers was submitted. Landers made an inspection of the premises in August 1990 and concluded that the circuit breaker and receptacle for the bedroom were adequate and that the electrical system was properly grounded. He found no defects in the wiring at that time. He also noticed the presence on the circuit box of the county certification of inspection of the wiring after installation and certification that it met county specifications.

1. As to the alleged oral agreements, Horney acknowledged during his deposition that no such agreements were made and summary judgment for Panter on these counts was appropriate. OCGA § 9-11-56 (e).

2. Plaintiffs Horney first contend that Panter committed negligence per se in hiring Horney to do electrical work because he,

Horney, was not a licensed electrical contractor. OCGA § 43-14-8 (a) provides that "[n]o person shall engage in the electrical contracting business as an electrical contractor unless such person has a valid license . . . and a certificate of competency, . . ." Electrical contracting is defined as "installation, maintenance, alteration, or repair of any electrical equipment, apparatus, control system, or electrical wiring device which is attached to or incorporated into any building or structure in this state. . . ." OCGA § 43-14-2 (6). The only exception to the licensing requirement arguably applicable here is OCGA § 43-14-16 (d), which allows an individual to install, alter or repair utility systems or electrical wiring services in a "single-family dwelling owned or occupied by him." Since, however, the home was not owned or occupied by Horney and the electrical work was not performed by Panter, this provision would not excuse the license requirement. See Op. Atty. Gen. 88-29.

Panter argued below that Horney was not among the class of people which the licensing statute was intended to protect. *Lively v. Trust,* 184 Ga. App. 361, 362 (361 SE2d 516) (1987); *Potts v. Fidelity Fruit &c. Co.,* 165 Ga. App. 546 (301 SE2d 903) (1983).

"In determining whether the violation of a statute or ordinance is negligence *per se* as to a particular person, it is necessary to examine the purposes of the legislation and decide (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against. [Cits.]" *Potts,* supra at 547.

OCGA § 43-14-1 states that Chapter 14 of Title 43 "is enacted for the purpose of safeguarding homeowners, other property owners, tenants, and the general public against faulty, inadequate, inefficient, or unsafe electrical . . . installations." Electrical contracting is declared to be a profession or business affecting the public interest and the chapter is to be liberally construed to fulfill its purpose.

Horney argues that he, as a member of the "general public," is within the class sought to be protected. " 'Where general words follow a list of particulars, the general words are construed to embrace only objects similar in nature to the particulars.' [Cit.]" *Lively,* supra at 363. Here, the particulars listed are all categories of persons who would be *using* electrical installations, not the installers thereof.

While Horney was clearly engaging in electrical contracting so that he was required to have the requisite license before working on another's property, Panter's hiring of him was not negligence per se under this analysis since Horney was not within the protected class.[1]

---

[1] To the extent that Horney relies on OCGA § 43-14-6 (a) (5) (E) for support, it is misplaced. That section allows for the e.g., suspension and revocation of an electrician's license upon assisting an unlicensed person to practice electrical contracting. Since Panter had

3. Since Horney was an invitee, Panter owed him the same duty he owed all invitees, that of ordinary care. OCGA § 51-3-1. "The general rule, however, is 'that a landowner is not liable for injuries to an invitee arising from a patent defect on the premises preexisting the arrival of the invitee and of which the invitee knew or had the means of knowing equal to the landowner. . . . The true ground of liability is the landowner's superior knowledge of the perilous condition and the danger therefrom to persons coming upon the property. It is when the perilous condition is known to the owner and not known to the person injured that a recovery is permitted. (Cit.)' [Cit.]" *Roth v. Wu,* 199 Ga. App. 665, 666 (1) (405 SE2d 741) (1991).

When the movant in summary judgment is the defendant, he must pierce the plaintiff's pleadings and affirmatively negate one or more essential elements of the complaint. *Corbitt v. Harris,* 182 Ga. App. 81, 83 (354 SE2d 637) (1987). To the degree that the claim is based on the allegation that Panter failed to label the circuits, Panter has shown, and Horney acknowledges, that Horney was fully aware that the circuits were not labelled and had taken steps to identify the appropriate circuits. It is also undisputed that the injury occurred after Horney, without any direction from Panter as how to conduct the work, had taken the covers off electrical switches and was working on the wiring itself with full knowledge that electricity could harm him. In fact, he had been mildly shocked by this system prior to the larger shock.

"In the instant case, there was no breach of the duty to keep the premises safe for invitees because there is no assertion of the existence of any defects or conditions which were in the nature of hidden dangers, traps, and the like, such that they would not be known to appellant and would not be observed by him in the exercise of ordinary care." *Johnson v. Richardson,* 202 Ga. App. 470, 471 (414 SE2d 698) (1992). Panter met his burden on summary judgment of showing that he " ' "had no superior knowledge of any defect of which he should have warned, or was under the duty to warn, [Horney] as a part of [Panter's] ordinary diligence." ' " *Anderson v. Saffold,* 134 Ga. App. 31, 34 (213 SE2d 127) (1975) (emphasis in original), cited in *Johnson,* supra. Here, Horney was aware that the circuits were not labelled and was aware that a danger of electrical shock was present.

4. In the second enumeration, it is argued that summary judgment was improper due to factual issues as to whether the electrical system in the residence posed an "open and obvious risk" sufficient to bar the claim.[2] The dispute in facts was premised upon the Biermann

---

no such license, this provision is inapplicable.

[2] The discussion of the "open and obvious," rule applicable to products liability situations, compare *Weatherby v. Honda Motor Co. Ltd.,* 195 Ga. App. 169, 170 (393 SE2d 64)

affidavit submitted in opposition to the summary judgment motion.

The affidavit reflected Biermann's qualifications as an electrical contractor. Biermann claimed no personal knowledge of the Panter residence or the events surrounding Horney's injury. He had met with Horney's attorney "concerning the factual background" of the injury. The remainder of the affidavit was based on suppositions and suggestions of possible violations of the National Electrical Code which might be found upon examination of the Panter premises.

"[A] party resisting summary judgment, in addition to coming forward with evidence which is sufficient to create a genuine issue of material fact, must present some credible warrant for its admissibility." *Wilson v. Nichols*, 253 Ga. 84, 86 (3) (316 SE2d 752) (1984). *Jones v. Campbell*, 198 Ga. App. 83, 85 (2) (400 SE2d 364) (1990). In addition to failing in this particular, since the basis for his conclusions is predominately hearsay, the affidavit is not based on his personal knowledge, at least regarding the premises and the injury, in violation of OCGA § 9-11-56 (e). *Sullivan v. Fabe*, 198 Ga. App. 824, 828 (3) (403 SE2d 208) (1991).

Therefore, no dispute of fact is created and the grant of summary judgment was not error.

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED MAY 19, 1992 —
RECONSIDERATION DENIED JUNE 8, 1992.

*Garland & Samuel, Kathleen V. Duffield,* for appellants.

*Swift, Currie, McGhee & Hiers, Eric D. Miller, Stephen L. Cotter,* for appellee.

(1990) with *Ogletree v. Navistar Intl. Transp. Corp.*, 194 Ga. App. 41 (390 SE2d 61) (1989), is inapposite here.