A93A1892. ATLANTA GAS LIGHT COMPANY v. GEORGIA PUBLIC SERVICE COMMISSION et al.
(442 SE2d 860)

BEASLEY, Presiding Judge.

Atlanta Gas Light Company (the Company) appeals pursuant to OCGA § 50-13-20 of the Administrative Procedure Act, from an order affirming a final administrative decision of the Georgia Public Service Commission (PSC) under OCGA § 50-13-19. Although this is an appeal from a judicial review of an administrative agency, which in most

instances must follow the application procedure, OCGA § 5-6-35 (a) (1) permits direct appeals with respect to decisions of the PSC.

On May 31, 1991, the Company initiated a rate-change proceeding under OCGA § 46-2-25 (a), by filing new schedules with the PSC increasing the Company's rates and charges for gas service. The annual increase of $35,680,000 in gross revenues would begin July 1, 1991. On June 11, the PSC suspended the operation of the proposed new rate schedules for a period of five months, as authorized under OCGA § 46-2-25 (b), and scheduled hearings. Appearances were entered on behalf of the Company and various intervenors, including Georgia Power Company. It opposed the Company's rate filing and has remained a party through the administrative and appeal proceedings.

At the conclusion of the administrative hearings, the PSC authorized the Company to increase its rates to produce additional annual revenue of $4,921,000. It also suspended the Company's annual capacity charge applicable when a gas furnace is used as a backup heat source to a heat pump or other heating source. A second detailed order followed in which the PSC explained its earlier rulings and entered additional findings and conclusions. Petitions for rehearing from both orders were denied. This rendered moot the Company's appeal to this court from the superior court's affirmance of the PSC's decision in a 1990 proceeding which reduced the annual capacity charge. *Atlanta Gas Light Co. v. Ga. Pub. Svc. Comm.*, 206 Ga. App. 315 (425 SE2d 340) (1992). The reason was that the 1991 suspension of the annual capacity charge altogether meant that even if this court had reversed the superior court, the Company could not have enforced the right insisted on, i.e., an increased annual capacity charge. Id. at 317.

As to the 1991 proceeding, the superior court affirmed the PSC's orders on review.

The Company originally filed its appeal from the affirmance in the Supreme Court, claiming that construction of the Constitution of Georgia and of the Constitution of the United States were involved, so as to give it jurisdiction under 1983 Ga. Const., Art. VI, Sec. VI, Par. II (1). That Court transferred the case to this court because, according to its order, "this appeal raises issues only of the application of constitutional principles . . . See *Woodside v. City of Atlanta*, 214 Ga. 75, 76-77 (1) (103 SE2d 108) (1958)."

1. In its second enumeration of error, the Company challenges the "any evidence" standard of review applied by the superior court, asserting that a more judicially expansive "substantial evidence" standard is required instead, for the performance of the task assigned to the courts in OCGA § 50-13-19 (h) (5).

The first problem with this claim of error is that the question was

not raised and ruled on in the superior court. At least, we cannot find it in the record, and appellant has not "set() forth the method by which each enumeration of error was preserved for consideration," as required by Rule 15 (a) (1). It is true that the superior court in the order appealed from recites that where, as here, the appeal from the agency is on the ground that the agency decision was "clearly erroneous," OCGA § 50-13-19 (h) (5), the "any evidence" standard applies. However, this was merely a statement in the court's fully explanatory order referencing the standard it used; it was not a ruling on an issue raised as to what standard subsection (h) (5) required. If appellant sought the use of a different standard by the superior court than had been established and continued in controlling cases, see, e.g., *Lasseter v. Ga. Pub. Svc. Comm.*, 253 Ga. 227, 231 (3) (319 SE2d 824) (1984), it was incumbent on appellant to seize the opportunity below to insist on the application of the different standard. As a court of review, this court does not decide questions which were not raised and ruled on and preserved in the record below. *Cole v. State*, 211 Ga. App. 236, 237-238 (438 SE2d 694) (1993).

Even if this procedural hurdle were cleared, there is another, and that is the problem of mootness. We are dealing with a 1991 rate proceeding, and it is not contested that since then there has been a 1992 proceeding and PSC decision.[1] Any error of the superior court in affirming the PSC on the issues preserved for our review could not be corrected by a reversal. The rates superseded by the 1992 PSC decision could not now be revised; the Company could not go back and recompute the rates charged in accordance with the 1991 PSC order. So it would be an exercise in futility for the superior court to reconsider the evidence under a "substantial evidence" test, which is the remedy the Company seeks from this court.

That, however, would not necessarily close the door to review of this question of the proper standard of review. As repeated in *Atlanta Gas Light Co.*, supra at 317, " 'There is . . . an exception to the mootness doctrine with respect to an issue of a recurring nature, of general public interest and importance, and which will evade appellate review unless the court exercises its discretionary jurisdiction.' " See also *Chastain v. Baker*, 255 Ga. 432 (339 SE2d 241) (1986). Obviously, the correct standard must be known, as it is called into service every time there is a review under that subsection, from any agency covered by the Administrative Procedure Act. This issue, the construction of OCGA § 50-13-19 (h) (5) with respect to the scope of judicial review of evidence underlying an administrative decision, is just such an is-

---

[1] At oral argument in the instant case in September 1993, we were advised that a PSC decision was imminent in a 1993 rate proceeding.

sue for this appellant. As the Company pointed out at oral argument, it should not have to sacrifice its right to seek a "just and reasonable" rate change under OCGA § 46-2-25, which it believes necessary to avoid a deteriorating financial condition, in order to preserve for ultimate appellate review the issue of the correct standard of review contemplated in the APA. However, the issue is not one which inherently would evade review, because mootness would not occur in the cases of most appellants who are challenging administrative agency decisions. See, e.g., the myriad of workers' compensation cases.

Even if we consider this question as an exception to the bar of mootness, there is yet another hurdle which the appellant cannot clear, before a review of the merits of the issue could be considered, and it is a formidable one. That is, we are bound by the decisions of the Supreme Court of Georgia. 1983 Ga. Const., Art. VI, Sec. VI, Par. VI.

The Company acknowledges the Supreme Court's application of an "any evidence" standard to administrative decisions in *Hall v. Ault*, 240 Ga. 585 (242 SE2d 101) (1978), "leaving only a determination of whether the facts found by the board are supported by 'any evidence.'" Id. at 586.[2]

Not to be deterred, the Company urges that this authority is no longer controlling, due to changes in the 1983 Georgia Constitution which designates our appellate courts as "court[s] of review." See Art. VI, Sec. VI, Par. II, for the Supreme Court, and Art. VI, Sec. V, Par. III, for the Court of Appeals. When *Hall v. Ault* was decided, the 1976 Constitution was in effect. It provided in Art. VI, Sec. II, Pars. IV and VIII, that the appellate courts shall be courts "for the trial and correction of errors of law."[3]

This argument of the Company faces two obstacles. First, the Supreme Court has continued to apply the "any evidence" standard to the superior court's review of administrative decisions, notwithstanding the changes in the Constitution. See *Emory Univ. v. Levitas*, 260 Ga. 894, 898 (401 SE2d 691) (1991), in which the Court held that the "any evidence" standard applies to the superior court's review of decisions of a local administrative agency or local governing body. It re-

---

[2] The Supreme Court rejected the dissent's position that the APA expressly imposed the "substantial evidence" test, which would allow broader judicial review when the court considers whether an agency was clearly in error. See also *Lasseter*, supra. The "any evidence" standard of review for determining whether an agency decision is "clearly erroneous" was first adopted in *Ga. Dept. of Human Resources v. Holland*, 133 Ga. App. 616 (1) (211 SE2d 635) (1974).

[3] The Company argued in its brief to the Supreme Court of Georgia, before the case was transferred, that *Hall v. Ault* should be overruled. Here the argument is that *Hall v. Ault* is not controlling because of the intervening constitutional change of the breadth of appellate review. We, of course, could not overrule a decision of the Georgia Supreme Court. See, e.g., *Adams v. State*, 174 Ga. App. 558, 559 (2) (331 SE2d 29) (1985).

iterated that "OCGA § 50-13-19 (h) (5) only permits a superior court to apply an any-evidence standard of review to a state administrative agency's decision." See also *Ga. State &c. Comm. v. Lyons*, 256 Ga. 311, 312 (348 SE2d 642) (1986). We, too, have continued its use despite a challenge. *Ga. Power Co. v. Ga. Pub. Svc. Comm.*, 196 Ga. App. 572, 579 (5) (396 SE2d 562) (1990). We recognize that this particular argument has not been addressed in the post-1983 decisions. There is authority for considering the issue as open. As repeated in *Gordy Tire Co. v. Dayton Rubber Co.*, 216 Ga. 83, 89 (1) (114 SE2d 529) (1960): " ' "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." ' [Cits.]" We have recently applied this principle, which is related to constitutional authority (as to Supreme Court rulings) as well as to the judicial decision-making process (as to prior Court of Appeals rulings) in *Union Camp Corp. v. Southern Bulk Indus.*, 193 Ga. App. 90, 92 (386 SE2d 866) (1989), aff'd 259 Ga. 828 (388 SE2d 524) (1990). There it was held that a similar case in the Supreme Court did not engender a binding precedent because the issue had not been raised in that case.

Secondly, even if there is some broadening of the scope of review provided in the 1983 Constitution for the Supreme Court and the Court of Appeals, that has nothing to do with the scope of review provided in OCGA § 50-13-19 (h) (5) for superior court review under the Administrative Procedure Act. It is the latter which appellant contends is wrongly construed, and that does not depend on the construction of the former. Statutory construction in this instance is not dependent on constitutional construction. As stated in the transfer order of this case by the Supreme Court, no issues of original constitutional construction are raised.[4] Statutory construction is at issue, but as to that, the principles of *Hall v. Ault* remain extant and are binding on this court. 1983 Ga. Const., Art. VI, Sec. VI, Par. VI. There is no basis for us to surmise, much less conclude as a matter of law, that the legislature meant subsection (h) (5) to take on a different meaning due to the adoption of the constitutional revision. The fact that the legislature has not corrected the courts' interpretation of

---

[4] Some of the history of the particular changes noted by appellant as having been made in the 1983 Constitution of Georgia may be found in the transcripts of the meetings of the Committee to Revise Article VI, State of Georgia Select Committee on Constitutional Revision 1977-1981, Vol. III. The following portions shed some light in the adoption of "court of review": Meeting of August 8, 1980, pages 146 line 7 to 155 line 20, page 162 lines 3 to 15; pages 4-6 of the Commentary of December 22, 1980, describing some of the background and rationale for each paragraph of the final proposed draft of Article VI. For some of the history of the former wording, see *Balkcom v. Vickers*, 220 Ga. 345, 347 (1) (i) (138 SE2d 868) (1964).

subsection (h) (5) in the decade since adoption of the new constitution indicates that it did not intend a broadening of the evidentiary standard of review in that subsection to automatically take place because of the new language in the constitution.

Thus, a change in the standard of review must come from the Supreme Court of Georgia in a proper case, or from the legislature if it determines that the Supreme Court's construction of its enactment is in error or should be changed.

2. In enumerations of error 1, 3, 4 and 5, the Company asserts that the PSC's rulings are confiscatory and violate due process of law. The issues raised by the enumerations are moot because of the subsequent rate changes. Even if we were to reverse and remand this 1991 rate case back to the superior court and it reversed the PSC, adjustments in its decision would have no practical effect. There would be no benefit to the complaining party. See *Chastain*, supra at 433. New rates have been sought and ruled upon by the PSC. Even if these issues were not moot, there is no reversible error, as discussed below.

"Rate-making is a highly technical task, heavily dependent on experts. It lies in the legislative domain. [Cits.] The task was delegated by the legislature to a statutory commission of five elected persons. OCGA § 46-2-1. 'The Georgia Public Service Commission was created for a special purpose with special competence to deal with special matters including the establishment of rates for public utilities.' [Cits.] 'The commission shall have exclusive power to determine what are just and reasonable rates and charges to be made by any . . . corporation subject to its jurisdiction.' OCGA § 46-2-23." *Ga. Power Co.*, 196 Ga. App. at 572, 576, supra.

"The [superior] court must accept the factual findings of the PSC if there is any evidence to support them. If arbitrary and capricious action is alleged the court must determine whether a rational basis exists for the decision made. As said, it is a question of law. [Cits.] Likewise, as this court then reviews the actions of the PSC, the evidence is again construed in favor of the decision rendered, as it is when it is reviewed by the superior court. . . 'At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the utility. . . .' " (Indention omitted.) Id. at 580-581. Under OCGA § 46-2-26.4 (b), "The utility shall have the burden of explaining and supporting the reasonableness of all estimates and adjustments contained in its cost of service data."

On the other hand, "[i]f a rate order issued by the commission does not authorize a regulated utility to earn an amount to sufficiently compensate its investors reasonably, to maintain its credit, to attract capital, and to maintain the requisite level of services, then it is the duty of the judiciary to set aside such a rate order as confisca-

tory and violative of substantive due process of law." *Ga. Power Co. v. Ga. Pub. Svc. Comm.*, 231 Ga. 339, 341 (201 SE2d 423) (1973).

The PSC determined that the Company was required to earn additional revenues of $4,921,000 effective December 1, 1991. The Company asserts for the reasons that follow that it cannot earn the amount which the PSC determined is necessary.

(a) The Company submits that the PSC erred in calculating net operating income because it failed to consider evidence of updated economic forecasts. Further, it alleges that the Commission abused its discretion in failing to reschedule or continue the hearings to allow for further analysis of the updated data.

The purpose of the rate proceeding was to set rates that would produce the required revenue in the period when the rates would be in effect. As explained in the PSC's order, under OCGA § 46-2-26.4 "[t]he [PSC] must set rates based on a completely forecasted test year. . . [T]he information provided by [the Company] must be based on a twelve month period which does not begin until after the [PSC] has made a decision in this case. Thus, no evidence of income, expenses, operations or policies in the test year can be actual data." According to this Code provision, monthly actual cost of service data is to supplement this information as it becomes available.

The Company initially presented evidence of operating income of $92,482,000, based on data from a fall 1990 forecast. Five months after initiating the rate proceeding, on September 30, it filed an updated spring 1991 forecast. After initial opposition to the updated forecast on the part of the Staff[5] and Intervenors, the parties ultimately stipulated to its admission in evidence. The Company suggests that failure to consider the updated forecast significantly affected the projected return on equity because the fall forecast inaccurately predicted a higher level of sales and a lower number of customers eligible for low-income elderly discounts, than did the more accurate, more current, spring forecast.

The PSC's order relates with respect to the updated forecast: "[T]he September 30, 1991, 'updated testimony and exhibits' are evidence of record in this case and were considered by the Commission. As was clear throughout the hearings, the 'updated testimony and exhibits' were filed only five working days prior to the date from which the Staff and Intervenors were required to prefile their cases-in-chief. . . Because of this shortness of time, the Staff and Intervenors were unable to properly analyze the Company's 'updated testimony and exhibits.' Even if all parties had reviewed the update, the limited

---

[5] The "Staff," as referred to herein, include members of the staff of the PSC selected to present an adversarial case in opposition to the Company's filing.

time for such review would have made a thorough analysis impossible. Thus, the 'updated testimony and exhibits' were not subject to scrutiny by the Staff and Intervenors, and do not present the most credible evidence upon which the Commission should base its decision in this case." Nevertheless, the PSC reiterated that it had adopted the stipulation of counsel "and has considered the updated testimony and exhibits. . . . ."

The superior court affirmed the Commission's ruling, concluding that it constituted "a rational method of conducting an efficient and expeditious hearing" under OCGA § 46-2-58 (b).

The Commission specifically states that it did consider the updated forecast as evidence in the case, but because it was filed so late in the proceedings and could not be thoroughly analyzed, it was not the most credible evidence under consideration. The PSC is the judge of facts, credibility and weight to be accorded the evidence. See *Lasseter v. Ga. Pub. Svc. Comm.*, 253 Ga. 227, 230 (2) (319 SE2d 824) (1984). The test is whether there was any evidence to support the PSC's conclusions. It is not legal error to give evidence little weight or lesser credibility. The Company has not carried its burden of establishing the absence of any evidence.

With respect to the agency's procedural decision to refuse a postponement for additional staff and intervenor study and response to the updated forecasts, the Company must show abuse of discretion which has prejudicial substantial rights of the Company. OCGA § 50-13-19 (h) (6). This it has not done. For one thing, the statutory scheme for gas utility rate proceedings does not contemplate the postfiling submission of more current forecasts, although it does not prohibit such a practice. OCGA § 46-2-26.4 (b).

(b) The Company asserts that the court erred in affirming the PSC's decision to disallow employee wage increases at the requested rate.

The PSC allowed a total five percent increase in wages for rate making purposes. The Company asserts that it produced evidence establishing that a six-and-one-half percent increase was necessary to bring salaries closer to the levels paid by comparable companies and to satisfy union collective bargaining agreements. In opposition, expert testimony was offered to the effect that the Company's proposed wage increases were improperly calculated on an inflated cost of living component and incorrect assessment of the economy. This expert recommended that the PSC recognize a four percent cost of living rate and a one percent increase for performance purposes to be responsive to economic conditions. This was based in part on the Consumer Price Index for the Atlanta area for the four previous years plus the projected CPI published September 1991. The evidence supports the rejection of a combined cost of living and performance-based increase

higher than five percent.

(c) The Company asserts that the PSC erred in disallowing $383,000 in regulatory expenses, and in so doing, followed unlawful procedure, disregarded the evidence and abused its discretion.

These expenses were incurred in connection with the Company's participation before the PSC in proceedings known as the promotional practices docket. As supported by expert opinion testimony, the PSC determined that the Company should receive a cost allowance based on the prospective expenses for the period in which the new rates would be in effect and disallowed retroactive recognition of such costs.

The superior court affirmed this ruling as having been supported by the evidence and in compliance with OCGA § 46-2-26.4.

That Code section, enacted by Ga. L. 1991, p. 1705, § 1, effective April 19, 1991, is applied for the first time in this 1992 rate-making proceeding. Subsection (b), referenced earlier, provides in pertinent part: "In any proceeding to determine the rates to be charged by a gas utility, the gas utility shall file jurisdictionally allocated cost of service data on the basis of a test period, and the commission shall utilize a test period, consisting of actual data for the most recent 12 month period for which data are available, fully adjusted separately to reflect estimated operations during the 12 month period commencing five months from the proposed effective date of the rates. . . ." The PSC adopted the Staff's recommendation and applied this 12-month future test year provision, disallowing retroactive recognition of the $383,000 in regulatory expenses. This is in compliance with the statutory scheme and is supported by the evidence.

3. The Company challenges a portion of the PSC's ruling which anticipates future cases and which states: "OCGA § 46-2-26.4 prohibits the filing in future cases . . . of testimony by the Company subsequent to the Company's initial filing." It submits that because the use of updated projections is consistent with OCGA § 46-2-26.4 in order to achieve the greatest degree of accuracy, "it is likely that in future cases, failure to consider an updated forecast will result in an overstatement of the revenue deficiency." Thus, the Company submits, the ruling is in excess of the PSC's statutory authority and constitutes an abuse of discretion.

As decided in Division 2 (a), supra, exclusion of updated forecast data is not an issue in this case. The Company is in essence seeking an advisory opinion construing the scope of and timing for, evidence in a proceeding under OCGA §§ 46-2-26.4 and 46-2-25 (b), for future rate cases. We treat such as did the Supreme Court in *Bd. of Trustees &c. v. Kenworthy*, 253 Ga. 554, 557 (322 SE2d 720) (1984): "This court has in the past generally refused to issue advisory opinions. [Cits.] . . . We normally limit our rulings to the specific case or con-

troversy decided by the trial court, [cit.], and do not venture an opinion as to the legality of future actions which may or may not occur." The PSC's announcement of its intended practice in cases other than this one is an abstract question, not related to the controversy presently before the court. Thus, the legitimacy of the PSC's interpretation of OCGA § 46-2-26.4 (b) on this issue will not be addressed. See *Chastain*, supra at 433.

4. The Company contends that the court erred in suspending the annual capacity charge.[6] Even if the issue were not moot, the Company would not prevail.

The Company imposed an "annual capacity surcharge" on customers who use a gas furnace for auxiliary heating as a backup to an electric heat pump. It submits that the surcharge is required because the Company does not otherwise recover the demand costs associated with this limited use of a gas furnace at peak winter periods. It sought by way of the new schedules to increase its annual capacity surcharge from $4.29 per therm to $8.34.

Instead of authorizing an increase, the PSC suspended the annual capacity charge. This ruling is explained in the PSC's order: "In the 1990 rate case the [PSC] determined that when a gas furnace is used as backup heat source to a heat pump or other heating source, the furnace imposes the same demand costs from on-peak use as a furnace used as a primary heat source. However, the use of a gas furnace as a backup heat source does not use sufficient levels of consumption to recover the demand costs. The [PSC] determined in 1990 . . . that an Annual Capacity Charge was an appropriate mechanism to recover the demand costs and set the rate at $4.29 in that proceeding." This was based on a cost of service study prepared by the Company in the 1990 case.

The order continues: "The Adversary Staff reviewed and considered the Company's cost of service study and incorporated it into its testimony in this case. The new data submitted by the Company caused the Adversary Staff to depart from its recommendation in last year's rate case."

The PSC then considered conflicting expert testimony offered at the hearings and concluded: "In view of the importance of this issue, the amount of conflicting testimony and the interest of the Commission to establish a permanent policy with regard to the surcharge, the [PSC] finds that the present capacity charges . . . shall be temporarily suspended for the purpose of holding a generic hearing on capacity charges." Although it directed that such hearings be conducted

---

[6] Intervenor Georgia Power Company filed a brief in support of the PSC's ruling with respect to suspension of the Company's annual capacity charge.

within 60 days of the order, such hearings apparently did not materialize. Since then, new rate filings having been made.

The superior court affirmed this ruling on the ground that the PSC's "stated purpose to clarify its position in order to establish a permanent policy in light of the conflicting testimony given at the hearing on review has a rational basis, and is supported by evidence under the 'any evidence' standard."

The Company does not challenge the decision to hold a generic hearing but asserts that the suspension altogether of the charge "was arbitrary and capricious and a clear abuse of discretion . . . because of its belief that more data was necessary to determine the propriety of the increase proposed by the Company." It offers no authority or reason in support of its position, other than that the PSC had permitted the charges in the 1990 rate case as an appropriate mechanism to recover costs. "If arbitrary and capricious action is alleged the court must determine whether a rational basis exists for the decision made." *Ga. Power Co. v. Ga. Pub. Svc. Comm.*, 196 Ga. App. at 581 (5), supra. "The opinions of competent experts may constitute such a rational basis." Id. at 580 (5).

There was conflicting expert opinion varying from no required surcharge to a charge of $8.34 and, as the PSC explained in its order, a lack of data necessary to "determine the justness and reasonableness of the annual capacity surcharge proposed by [the Company] in this case." This provided a rational basis for suspending the surcharge pending receipt of additional information.

The PSC and Intervenor relate in their briefs that the surcharge issue is presently under consideration in connection with the 1993 rate making proceeding. If that is so, the Company will have, or has now had, an opportunity to offer evidence in that proceeding and to appeal from any adverse ruling.

*Judgment affirmed. Cooper and Smith, JJ., concur.*

DECIDED MARCH 17, 1994 —
RECONSIDERATION DENIED MARCH 28, 1994 —

*Long, Aldridge & Norman, Albert G. Norman, Jr., Gordon D. Giffin, L. Craig Dowdy*, for appellant.

*Michael J. Bowers, Attorney General, Beverly B. Martin, Senior Assistant Attorney General, David I. Adelman, Roger M. Siegel, Assistant Attorneys General, Troutman Sanders, Douglas L. Miller, Hugh M. Davenport, Nancy G. Gibson*, for appellees.