**CANADYNE–GEORGIA CORPORATION,**
Plaintiff,

v.

**Mr. Thomas W. CLEVELAND; Mr. John H. Thurman; the J.W. Woolfolk Trust; Woolfolk Chemical Works, Ltd.; Ms. Rachel Mathes, Mr. Thomas W. Cleveland, Jr. and Mr. John W. Moye, in their capacity as current Co–Trustees of the J.W. Woolfolk Trust, Defendants.**

No. 5:96–CV–114–1 DF.

United States District Court,
M.D. Georgia,
Macon Division.

Sept. 30, 1999.

Walter H. Bush, Jr., Macon, GA, John Clay Spinrad, Atlanta, GA, for Canadyne–Georgia Corporation, plaintiff.

Russell Wayne Thorpe, Alston & Bird, Atlanta, GA, Laurin McCallum McSwain, Atlanta, GA, for Nationsbank, N.A. (South), defendant.

Michele L. Davis, Atlanta, GA, for J.W. Woolfolk Trust, defendant.

Mara McRae, Richard A. Horder, Lisa G. Youngblood, Atlanta, GA, for Woolfolk Chemical Works, Ltd., defendant.

Lisa G. Youngblood, David A. Sapp, Atlanta, GA, for Thomas W. Cleveland, defendant.

David A. Sapp, Atlanta GA, for John W. Moye, Rachel Mathes defendants.

Lisa G. Youngblood, Atlanta, GA, for John H. Thurmand, defendant.

Ligia Patricia Arias, Ms., Atlanta, GA, for Estate Executors for Thomas Cleveland, defendant.

FITZPATRICK, Chief Judge.

Plaintiff, Canadyne–Georgia Corporation (Canadyne), filed this suit under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601 *et seq.*, claiming that the Defendants should be required to contribute funds for cleanup costs incurred by Canadyne as a result of a mandate issued by the Equal Protection Agency (EPA). Defendants, Woolfolk Chemical Works Limited (WCW), and the J.W. Woolfolk Trust (the Woolfolk Trust) have now moved for summary judgment pursuant to Rule 56 of the FRCP. For the reasons discussed below, that motion is hereby denied.

## FACTUAL BACKGROUND

For a number of years, the Defendant, WCW, operated a facility that manufactured pesticides in Fort Valley, Georgia. The history of the Fort Valley facility goes back over 80 years. The facility, which was used throughout its history to make pesticides, was originally founded as a proprietorship by J.W. Woolfolk. In 1925, the J.W. Woolfolk Corp. was formed, and it ran the facility until 1941. After the corporation's dissolution in 1941, the facility was transformed into a limited partnership, Woolfolk Chemical Works Ltd. (WCW). WCW was "reincarnated" as a

limited partnership on three separate occasions. In 1972, however, WCW incorporated, and as part of this incorporation, it sold all assets to the newly formed Woolfolk Corp. No Certificate of dissolution was ever filed by WCW after the 1972 incorporation.

Five years later, in 1977, Woolfolk Corp. was purchased by a corporate affiliate of Canadyne and renamed Canadnye–Georgia Corp. Canadnye continued to engage in the manufacture of pesticides until 1984, when it sold the pesticide business and most of its assets to another party. This suit is the outgrowth of an action originally brought by the EPA. Between 1990 and 1995, the EPA issued several orders commanding Canadyne to address contamination at its facility in Fort Valley, Georgia. Among other things, Canadyne was instructed to relocate residents living near the plant, remove contaminated soil from the area, and purify the ground water at the plant. Following the directives of the EPA and the Georgia Environmental Protection Division, Canadyne has spent millions of dollars during the 1990s cleaning up the polluted facility. In this suit, Canadyne seeks to recover some of the costs of this cleanup operation from other potentially responsible parties.

### STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Proc. 56(c); *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir.1994). If the moving party demonstrates that there is "an absence of evidence to support the non-moving party's case," the burden shifts to the non-moving party to go beyond the pleadings and present specific evidence giving rise to a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In reviewing a motion for summary judgment, the court must construe the evidence and all inferences drawn from the evidence in the light most favorable to the non-moving party. *WSB–TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988). Even if there exists some alleged factual dispute between the parties, summary judgment is not necessarily improper; there must be a genuine issue of *material* fact to render summary judgment improper. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### LEGAL CONCLUSIONS

CERCLA was passed by Congress in 1980 in response to the many problems created by the release of hazardous substances into the environment. An "essential purpose" of CERCLA is to make "those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir. 1986). In furtherance of this end, CERCLA imposes strict liability on four classes of people for any cleanup costs necessitated by the release or threatened release of hazardous substances. Those covered by the statute include:

1) the owner and operator of a vessel or a facility,

2) any *person* who at the time of disposal of any hazardous substance *owned or operated* any facility at which such hazardous substances were disposed of,

3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incin-

eration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance.

42 U.S.C. § 9607(a) (Emphasis added).

In order to hold responsible parties liable for the cleanup of hazardous waste, CERCLA provides two separate means of recovery, the availability of which depends on the status of the person seeking to be compensated for the cleanup costs. An "innocent" party—one that is neither responsible nor potentially responsible for cleanup costs under § 107 of the statute—can bring an action to recover cleanup costs directly under § 107. *See Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1513 (11th Cir.1996). A government entity, for instance, may recover any cleanup costs it has incurred in cleaning up a hazardous site. And, in bringing a recovery action under § 107, an innocent party can often hold a responsible party jointly and severally liable for any cleanup costs incurred.[1]

In contrast to an innocent party, a party that is responsible or potentially responsible for cleanup costs under § 107 is limited to bringing an action for equitable contribution under § 113(f).[2] *See Redwing Carriers,* 94 F.3d at 1513; *see also United States v. Colorado & E.R. Co.,* 50 F.3d 1530, 1535–36 (10th Cir.1995); *Amoco Oil Co. v. Borden Inc.,* 889 F.2d 664, 672 (5th Cir.1989); *United Technologies Corp. v. Browning–Ferris Indus.,* 33 F.3d 96, 99–100 (1st Cir.1994); *Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 764 (7th Cir. 1994). In many cases, the fact that a party is limited to bringing a claim for contribution will not have a significant impact on the outcome of a case. There are, however, differences between a cost recovery action under § 107 and a claim for contribution under § 113(f) that can be important in some cases.[3]

In the instant case, Plaintiff concedes that it is a responsible party under § 107. In fact, the purpose of Plaintiff's suit is to recover cleanup costs it incurred as a result of an action brought by the EPA under § 107. Consequently, to the extent Plaintiff can recover here, its claim is one for contribution under § 113(f). Plaintiff contends that the Defendants should be forced to contribute a share of Plaintiff's cleanup costs since the partnership released hazardous chemicals onto the property now owned by Canadyne during WCW's period of ownership. While Defendants dispute the nature and quantity of the pollution they are allegedly responsible for, they conceded in oral argument

---

1. If a defendant can demonstrate that the pollution at a site is "divisible," that defendant will not be jointly and severally liable to a non-responsible party under § 107. *See Redwing Carriers,* 94 F.3d at 1513; *In re Bell Petroleum Servs., Inc.,* 3 F.3d 889, 904 (5th Cir.1993); *United States v. Alcan Aluminum,* 964 F.2d 252, 268–69 (3d Cir.1992). In many cases, however, because of the nature of the harm, there will be no reasonable basis for apportioning fault, and consequently, a responsible party will be liable for the entire cost of the cleanup operation in a recovery action brought under § 107.

2. Not every court agrees that a responsible party is limited to a claim for contribution under § 113(f). *See generally* Alan Hanson, *Cost Recovery or Contribution?: an Overview and Resolution of the Controversy Surrounding Private PRP Standing Under CERCLA Sections 107(A)(4)(B) and 113(F)(1),* 10 Geo. Int'l.

Envtl. L.Rev. 199, 207 (Fall 1997) (collecting cases in which courts have allowed potentially responsible parties ("PRPs") to bring a recovery action under § 107). Courts that have permitted suits by PRPs under § 107 have based their decisions on the language and structure of CERCLA, its legislative history, and its broad remedial purpose. *See generally id.* at 208–14. Notwithstanding these arguments, the Eleventh Circuit has adopted a contrary position. "[W]hen one liable party sues another liable party under CERCLA, the action is not a cost recovery action under § 107(a). Rather, it is a claim for contribution under § 113(f)." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1513 (11th Cir.1996).

3. *See* Hanson, *supra* n. 2, at 204–207 (itemizing differences between cost recovery actions under § 107 and contribution actions under § 113).

that some discharges were made during the time in which WCW owned the facility. Nonetheless, Defendants claim that any liability WCW had for environmental damage was assumed by the Plaintiff when the partnership assets were sold to the Woolfolk Corporation (later renamed Canadyne) in 1972. Moreover, because Defendants contend that the limited partnership dissolved and distributed its assets, they argue that WCW is no longer a "person" that can be sued under CERCLA. Accordingly, Defendants do not believe that they should have to contribute anything under § 113(f). The Court will address each of the Defendants' contentions in turn.

A. *Did the Defendant Transfer Its Liability to the Plaintiff When It Sold the Partnership Assets to the Plaintiff?*

A party cannot altogether escape its liability under CERCLA by means of an agreement with another party. *See* 42 U.S.C. § 9607(e)(1). For instance, if a buyer of real property assumes all CERCLA liability in a contract with the seller, that promise will not prevent an innocent third party, such as a government agency, from holding the seller liable in cost recovery action brought under CERCLA. On the other hand, two responsible parties can allocate CERCLA liability among themselves. *See United States v. Hardage*, 985 F.2d 1427, 1433 (10th Cir.1993); 42 U.S.C. § 9607(e)(1).[4] The question then becomes whether the Plaintiff here assumed any liability under CERCLA when it purchased the assets of WCW.

■ In addressing that issue, the Court must first decide whether the law of the State of Georgia should be applied in this case. As other courts have noted, "Congress passed CERCLA in great haste and in the process left many holes in its frame-

work for courts to fill in." *Redwing Carriers*, 94 F.3d at 1499. One of those holes concerns the validity of an agreement to allocate liability between two otherwise responsible parties in the context of a claim for contribution under § 113(f). The validity of such an agreement is undoubtedly controlled by federal law. "CERCLA is a federal statute targeting a national problem: the cleanup of hazardous waste sites. Consequently, the rights and liabilities created by CERCLA are governed by federal law." *Id.* at 1500. In fact, CERCLA expressly provides that claims for contribution brought under § 113(f) "shall be governed by federal law." 42 U.S.C. § 9613(f)(1).

■ Although federal law governs the validity of an agreement to allocate liability in the CERCLA context, *see John S. Boyd Co. v. Boston Gas Co.*, 992 F.2d 401, 406 (1st Cir.1993), the Supreme Court has recognized that cases governed by federal law "do not inevitably require resort to uniform federal rules." *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727–28, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (citing *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 and *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 594–95, 93 S.Ct. 2389, 2397–98, 37 L.Ed.2d 187 (1973)). Instead, when a Court is called upon to fill a gap in a particular federal statute, its "task is to determine whether the 'federal law' should be a uniform common law rule or the applicable state law rule." *Redwing Carriers*, 94 F.3d at 1500–01 n. 13. "Whether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy 'dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of

---

4. Specifically, § 107(e)(1) provides that: "Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section." Although CERCLA was not passed until 1980, courts have recognized that pre-CERCLA contracts can

require one party to indemnify another against CERCLA liability. *See e.g. Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 327 (7th Cir.1994); *Beazer East, Inc. v. Mead Corp.*, 34 F.3d 206, 211 (3d Cir.1994).

applying state law.'" *Kimbell Foods,* 440 U.S. at 728, 99 S.Ct. at 1458 (quoting *United States v. Standard Oil Co.,* 332 U.S. 301, 310, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947)). In *Kimbell Foods,* the Supreme Court set forth a three-factor test for determining whether a court should craft a uniform federal rule or instead adopt state law as the substantive rule of decision in a particular case. First, a court must ask whether there is a need for a nationally uniform body of law in cases such as the one the court is hearing. *See id.* at 728, 99 S.Ct. at 1458. Second, the court must ask "whether application of the state law rule would frustrate important federal policy." *Redwing Carriers,* 94 F.3d at 1501. Finally, the Court must consider "the extent to which application of a federal rule would disrupt commercial relationships predicated on state law." *Kimbell Foods,* 440 U.S. at 728–29, 99 S.Ct. at 1458–59.

■ Applying the three-factor test from *Kimbell Foods,* the Court finds that Georgia law should be applied in determining whether there was an agreement by the Plaintiff to assume Defendants' CERCLA liability. First, the Court can discern no compelling reason why a uniform federal rule should be adopted in this context. In *Redwing Carriers,* the Eleventh Circuit had to decide whether a uniform federal rule should be crafted to address the issue of whether a limited partner could be held liable for the partnership's debts. Responding to the argument that a uniform rule would facilitate the enforcement of CERCLA by decreasing uncertainty over its application, the Court rejected the opportunity to fashion a uniform federal rule. "If this interest was sufficient in every case, then the Supreme Court would not, as it did in *Kimbell Foods,* have sanctioned adopting state law as the federal rule of decision." *Redwing Carriers,* 94 F.3d at 1501. Here, as in *Redwing Carriers,* the Court can see no reason, other than a desire to expedite enforcement of the Act, why a federal rule should be fashioned to address the issue of whether an agreement

between two otherwise responsible parties validly transferred CERCLA liability.

Second, Georgia law in this area does not conflict with the essential purpose of CERCLA, which is to "place the ultimate responsibility for the cleanup of hazardous waste on 'those responsible for problems caused by the disposal of chemical poison.'" *Florida Power & Light Co., v. Allis Chalmers Corp.,* 893 F.2d 1313, 1317 (11th Cir.1990) (quoting *United States v. Aceto Agric. Chems. Corp.,* 872 F.2d 1373, 1377 (8th Cir.1989)). CERCLA explicitly provides that responsible parties may allocate liability among themselves. *See* 42 U.S.C. § 9607(e)(1). The Court can see no reason, and the parties have offered none, why applying Georgia law to determine whether an agreement to allocate liability exists would frustrate the objectives of the Act.

Finally, adopting a uniform federal rule in this context could disrupt commercial relationships predicated on state law. In *Redwing Carriers,* the Eleventh Circuit recognized that when investors enter into a limited partnership, they evaluate their risks by looking to state laws concerning the extent to which limited partners can participate in the partnership's operations without losing their limited liability status. *See Redwing Carriers,* 94 F.3d at 1502. Concerned that a uniform federal rule addressing limited partner liability might upset the expectations of those who have relied on state law, the court declined to fashion a uniform rule regarding limited partner liability in the CERCLA context. Similarly, when a corporation or other entity purchases or sells another business, it will often seek to manage its risk by securing an indemnification agreement from the other party to the transaction. As in the limited partnership context, the parties to these transactions invariably rely on state law. Adopting a uniform federal rule concerning the validity of an agreement to allocate liability among transacting parties could disrupt the settled expectations of

those who have relied on state law when entering into these transactions.

In short, after applying the *Kimbell Foods* factors, the Court does not believe that a uniform federal rule is necessary in this context. Accordingly, federal law governing CERCLA liability should incorporate the applicable state law regarding an agreement to assume contingent liabilities. *See Hardage*, 985 F.2d at 1433; *Jones–Hamilton v. Beazer Materials & Services, Inc.*, 973 F.2d 688, 692–93 (9th Cir.1992); *Fisher Dev. Co. v. Boise Cascade Corp.*, 37 F.3d 104, 109 (3d Cir.1994). The Court therefore looks to Georgia law in resolving this dispute.[5]

Because the 1972 Bill of Sale between WCW and Woolfolk Corp. (which was later renamed Canadyne) contains no reference to any contingent liability or environmental liability, Plaintiff argues that the agreement between it and WCW in 1972 did not transfer the Defendants' liability for cleanup costs under CERCLA. Under Georgia law, it is well settled that "liabilities ... may be assumed under an agreement to do so." *Gwinnett Hosp. Sys., Inc. v. Massey*, 220 Ga.App. 334, 469 S.E.2d 729, 730 (1996). Here, Defendants rely on the following paragraph as the basis for their argument that the 1972 agreement transferred any and all liabilities, including contingent liability such as that found under CERCLA, to the Plaintiffs:

> *WITNESSTH:*
>
> WHEREAS, Grantor desires to transfer all of its assets, *subject to all of its liabilities*, to Grantee in exchange for 2,100,000 shares of the $1.00 par value common stock of Grantee which shall be issued to the partners of Grantor as follows ...

*Def.'s Brief in Supp. of Mot.Summ.J., Ex. 1, "Bill of Sale,"* at 1 (Emphasis added). After describing the assets to be transferred in great detail, the contract then states that "[t]his Bill of Sale and Assignment is executed upon the condition that the Grantee assumes and agrees to pay when due the liabilities shown upon the attached Schedule of Assets Acquired and Liabilities Assumed." *Id.* at 5.

Courts in other jurisdictions have generally held that agreements which fail to explicitly address contingent or environmental liability will not suffice to transfer liability under CERCLA. For instance, in *John S. Boyd Co., Inc. v. Boston Gas Co.*, 992 F.2d 401, 406–07 (1st Cir.1993), the court, applying Massachusetts law, examined a separation agreement with a similar assumption of liabilities clause. There, New England Electric System ("NEES"), a holding company that owned various utilities, purchased Lynn Gas and Electric Co. in 1957. Two years later, NEES decided to break Lynn Gas and Electric Co. into separate companies. In 1959, Lynn Gas Co. was formed and Lynn Gas and Electric Co. was renamed Lynn Electric Co. *See id.* at 403. The separation agreement between Lynn Electric and Lynn Gas provided that Lynn Gas would assume "all the duties and liabilities of Lynn Gas and Electric related to such gas business." *See id.* The agreement set forth the specific duties and liabilities, but it did not make any reference to environmental or other contingent liabilities. *See id.* at 407. Because the agreement did not explicitly address either contingent or environmental liability, the court found that the separation agreement did not evidence an intent to transfer environmental liability. *See id.; see also Interstate Power Co. v. Kansas City Power & Light Co.*, 909 F.Supp. 1224, 1232–33 (N.D.Iowa 1991) (absent clear, unambiguous reference to environmental or contingent liability, court would not recognize a valid transfer of liability under CERCLA); *Southland Corp. v. Ashland Oil, Inc.*, 696 F.Supp. 994, 1002 (D.N.J. 1988) (court refuses to recognize transfer of liability where contract fails to expressly allocate the risks of "CERCLA-like" liabilities).

---

**5.** Assuming state law applies, the parties do not dispute that Georgia law should be used in the instant case.

Applying Georgia law, this Court finds that the 1972 Bill of Sale between WCW and Woolfolk Corp. likewise failed to transfer environmental liability from the seller to the buyer. Ordinarily, general terms in an agreement are "restrained and limited by particular recitals." *McCann v. Glynn Lumber Co.*, 199 Ga. 669, 34 S.E.2d 839, 844 (1945); *accord Hearn v. Old Dominion Freight Lines*, 172 Ga.App. 658, 324 S.E.2d 517, 518 (1984) ("a limited or specific provision will prevail over one that is more broadly inclusive."). While the introductory paragraph to the Bill of Sale says that the grantor desires to transfer all of its assets, "subject to all of its liabilities," *Def.'s Brief in Supp. of Mot. Summ.J., Ex. 1, "Bill of Sale,"* at 1, the contract later describes the exact nature of those liabilities. Addressing the liabilities being transferred, the contract specifically states that the Plaintiff is responsible for the liabilities "shown" on the attached schedule. *See id.* at 5. And, as Plaintiff correctly notes, the Attached Schedule of Assets Acquired and Liabilities Assumed makes no reference to either contingent or environmental liability. *See id.* at 6. The contract's failure to specifically address contingent liability is particularly noteworthy in light of the fact that it does address contingent assets, specifically conveying them to the Plaintiff. *See id.* at 4 (granting to the buyer all "properties, rights, business, franchise, privileges and assets, tangible and intangible, including ... contingent and unknown interests.").

Despite the contract's failure to explicitly address the issue of contingent liability, Defendants argue that when one considers the context in which this transaction took place, namely, the reorganization of the business from a limited partnership to a corporation, an implied agreement to assume contingent liabilities can be inferred.

"Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight." Restatement (Second) of Contracts, § 202(1). Here, Defendants contend that the principal purpose of the agreement was to insulate the partners of WCW from personal liability. In light of this purpose, Defendants argue that the Court should infer an agreement by the Plaintiffs to assume the liabilities of WCW.

The problem with this argument is that it is premised on a self-serving characterization of the agreement's purpose. A court can only ascertain the purpose of an agreement by interpreting the terms of a contract. See Restatement (Second) Contracts, § 202 cmt. c (1979). Consequently, the Court can only accept Defendants' characterization of the agreement's purpose if the agreement itself supports such an interpretation. Here, no such purpose can be inferred from the terms of the agreement. At best, the contract supports an inference that the Defendants wanted to transfer all its assets, including contingent assets, as well as all the liabilities listed in the attached schedule.

Although one might expect a partnership conveying all its assets to a corporation to also transfer all its liabilities, Plaintiff offers a reason that might have motivated the Defendants' decision to retain certain liabilities.[6] It is also possible that the failure to adequately convey all liabilities is simply the result of poor draftsmanship of the purchase and sale agreement, but possibilities are not certainties, and the Court is not allowed to speculate on the intention of the parties. The agreement must be construed on its four corners, and the document simply does not say what the Defendants would have it say.[7]

6. Plaintiff argues that WCW may have retained its contingent liabilities in the hopes that the statute of limitations would run on any potential claims against the limited partnership prior to the public filing of a notice of dissolution.

7. The Court cannot accept Defendants' admission of parol evidence in support of their argument. First, Defendants have not offered the Court a valid justification for introducing parol evidence in this case. "Parol evidence is not admissible to contradict or construe an unambiguous contract." *Eichelkraut v.*

Putting aside the explicit terms of the contract, Defendants also argue that the Plaintiff assumed the environmental liabilities of WCW by virtue of Canadyne's status as a "successor corporation." The evidence here suggests that Plaintiff is a successor-in-interest to WCW.[8] "Generally, a purchasing corporation does not assume the liabilities of the seller, unless: (1) there is an agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the transaction is a fraudulent attempt to avoid liabilities; or (4) the purchaser is a mere continuation of the predecessor corporation." *Howard v. APAC–Georgia, Inc.*, 192 Ga.App. 49, 383 S.E.2d 617, 618 (1989). As Defendants correctly point out, the "continuation" exception to successor liability applies in cases, such as this one, where a purchasing corporation succeeds to the assets of a limited partnership. *See Pet Care Professional Center, Inc. v. Bellsouth Advertising & Publishing Corp.*, 219 Ga.App. 117, 464 S.E.2d 249, 251 (1995).

 Even if Plaintiff is a mere "continuation" of WCW, however, that only means that Canadyne, by operation of law, assumes the partnership's environmental liabilities with respect to third parties. The purpose of successor liability is to protect third parties, either creditors or tort claimants, from being left without recourse when a corporation or partnership either sells all its assets or changes the form in which it does business. *See e.g.* Restatement (Third) of Torts: Products Liability, § 12 cmt. b (1998) (discussing

rationale for holding successor corporations liable for the acts of predecessors); *Tift v. Forage King Industries, Inc.*, 108 Wis.2d 72, 322 N.W.2d 14, 17 (1982). Defendants have failed to cite a single case in which a court has held that a successor corporation is liable to its predecessor based solely on the relationship between the two parties. In fact, the only authority the Court has found is to the contrary. *See Tift*, 322 N.W.2d at 16–17 (suggesting that a successor corporation can seek indemnity from its predecessor after being found liable). Of course, the dearth of authority on this subject is hardly surprising. In most cases, the predecessor will transfer its liabilities by contract. And, even if the predecessor retains those liabilities, as it did here, the fact that it has no remaining assets will likely deter a successor from bringing suit. In any event, the fact that Plaintiff is a successor to WCW does not mean that the Plaintiff automatically assumed any liabilities vis-a-vis the Defendants.

The transfer of assets between WCW and Canadyne neither expressly nor impliedly shifted liability from the Defendant to the Plaintiff. Thus, the Court now turns to Defendants' second argument in which it claims that WCW is not a "person" subject to suit under CERCLA.

## B. *Is Defendant a "Person" Within the Meaning of CERCLA?*

Relying on several district court decisions, Defendants also argue that WCW is

Camp, 236 Ga.App. 721, 513 S.E.2d 267, 269 (1999) (citing *Frank v. Fleet Finance*, 227 Ga. App. 543, 489 S.E.2d 523, 526 (1997)). Second, Canadyne, despite Defendants' contention to the contrary, was a party to the 1972 Bill of Sale. "The law of corporations is founded on the legal principle that each corporation is a separate entity, distinct and apart from its stockholders." *Clark v. Cauthen*, 1999 WL 441925, *1 (Ga.Ct.App.1999) (citing *Exchange Bank of Macon v. Macon Const.*, 97 Ga. 1, 25 S.E. 326, 328 (1895)). Defendants seem to be proceeding from a flawed premise, namely, that the individuals, as opposed to the corporation and partnership, were the parties to this transaction.

However, because Canadyne, as a distinct legal entity, was a party to this transaction, the Court cannot accept the Defendants' self-serving characterization of the Plaintiff's intent with respect to the 1972 agreement.

8. Plaintiff has offered some evidence that WCW continued to conduct business after the 1972 Bill of Sale. Since the Court need not decide this issue in light of its ruling, the Court makes no determinative ruling as to whether this evidence would be sufficient to create a genuine issue of fact as to whether WCW continued operating after the 1972 sale of assets.

not a "person" that can be sued under CERCLA because the limited partnership is "dead and buried." In order to understand this argument, a bit of background is in order. In *Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 817 F.2d 1448 (9th Cir.1987), a panel of the Ninth Circuit had to decide whether a corporation that dissolved prior to CERCLA's enactment had the capacity to be sued under the statute. According to Fed.R.Civ.P. 17(b), a federal court must look to state law in determining whether a corporation has the capacity to sue or be sued. Following Rule 17(b), the court in *Levin* held that a corporation that had validly dissolved under California law was not amenable to suit under CERCLA. *Levin*, 817 F.2d at 1451. The holding in *Levin* has been challenged in numerous judicial opinions, the most influential being the decision in *United States v. Sharon Steel Corp.*, 681 F.Supp. 1492 (D.Utah 1987). There, the district court, relying on both the language and purpose of CERCLA, rejected the notion that a dissolved corporation could not be found liable under the statute. *Id.* at 1496. The court in *Sharon Steel*, however, distinguished between "dead" corporations—those which have dissolved—and corporations that are both "dead and buried"—those which have dissolved and distributed all corporate assets. *Id.* at 1498–99. Without opining a conclusion as to the latter group, the court held that a dissolved corporation could be held liable under CERCLA. *Id.*

Following on the heels of *Sharon Steel*, other courts addressed the unresolved issue of whether a "dead and buried" corporation could be sued under CERCLA. Many of these courts interpreted the statute as precluding liability against such entities in light of the fact that they would not have assets to satisfy a judgment. *See e.g. Hillsborough County v. A & E Road Oiling Service*, 877 F.Supp. 618, 621–22 (M.D.Fla.1995); *AM Properties Corp. v. GTE Products Corp.*, 844 F.Supp. 1007,

1013 (D.N.J.1994); *Chatham Steel Corp. v. Brown*, 858 F.Supp. 1130, 1152 (N.D.Fla. 1994); *Barton Solvents v. Southwest Petro-Chem*, 836 F.Supp. 757, 761 (D.Kan. 1993); *Stychno v. Ohio Edison Co.*, 806 F.Supp. 663, 670 (N.D.Ohio 1992); *City & County of Denver v. Adolph Coors Co.*, 813 F.Supp. 1471, 1475 (D.Colo.1992); *Traverse Bay Area Int. School Dist. v. Hitco, Inc.*, 762 F.Supp. 1298, 1301 (W.D.Mich. 1991); *United States v. Distler*, 741 F.Supp. 643, 646–47 (W.D.Ky.1990); *but see United States v. SCA Services of Indiana, Inc.*, 837 F.Supp. 946, 955 (N.D.Ind.1993); *Allied Corp. v. Acme Solvents Reclaiming*, 1990 WL 322940, *5 (N.D.Ill.1990). It is on this basis, among others, that WCW seeks relief in the instant case.

 Examining the language and purpose of the Act, this Court does not believe that a "dissolved partnership," even one that has distributed all its assets, is somehow absolved of liability under the Act. A "partnership" is a "person" within the meaning of CERCLA. *See* 42 U.S.C. § 9601(21). Neither the language nor purpose of the Act suggest that a "dissolved partnership" should be excluded from this definition. First, unlike other statutes, Congress did not limit the coverage of CERCLA to "existing" entities. *Cf.* 15 U.S.C. § 7 (Sherman Act defines a "person" to include "corporations and associations existing under or authorized by the laws of … any State."). Had Congress intended to exclude dissolved entities from coverage under the Act, it certainly knew how to do so. *See Sharon Steel*, 681 F.Supp. at 1496 n. 8. Second, the nature of CERCLA liability, as well as the purpose underlying the statute, strongly suggest that Congress did not intend to exclude dissolved partnerships from coverage under the Act. CERCLA is an inherently backward-looking statute that seeks to hold responsible even those whose transgressions occurred prior to the statute's enactment. *See United States v. Northeastern Pharmaceutical & Chem. Co.*, 810 F.2d 726, 733 (8th Cir.1986).[9] A partner-

---

**9.** For a comprehensive discussion of the remedial purpose behind CERCLA, *see* Blake A.

Watson, Note, *Liberal Construction of CERCLA under the Remedial Purpose Canon: Have*

ship's dissolution does not alter the fact that such an entity may have contributed to the disposal of hazardous materials. Excluding these entities from coverage under the Act would thwart a primary purpose of the statute, which is to "place the ultimate responsibility for cleaning up hazardous waste on 'those responsible for problems caused by the disposal of chemical poison.'" *United States v. Fleet Factors Corp.,* 901 F.2d 1550, 1553 (11th Cir. 1990) (quoting *Florida Power & Light Co. v. Allis Chalmers Corp.,* 893 F.2d 1313, 1316 (11th Cir.1990)).

■ To the extent that state dissolution laws might affect the Defendant's capacity to be sued, such laws are preempted by CERCLA. While a federal court is ordinarily required to look to the law of the state in which the district court is held in determining a partnership's capacity to be sued, *see* Fed.R.Civ.P. 17(b), "Congress has plenary power to supersede any of the Federal Rules of Civil Procedure by statute." *Sharon Steel,* 681 F.Supp. at 1495 (citing *United States v. Gustin–Bacon Div., Certainteed Prods. Corp.,* 426 F.2d 539, 542 (10th Cir.1970)). Congress did exactly that when it passed CERCLA. Those "covered" by CERCLA include "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2). This liability applies "[n]otwithstanding any other provision or rule of law, and subject only to the defenses" set forth in § 107(b) of the statute. *See id.* This language indicates Congress's intent to supersede any rule or law which might otherwise relieve a responsible party of liability under CERCLA, including state laws regarding a limited partnership's capacity to be sued.[10]

As the court in *Sharon Steel* noted, "[e]very statute limiting liability defines, at least in part, one's capacity to be sued, and every statute limiting one's capacity to be sued also limits liability." *Sharon Steel,* 681 F.Supp. at 1497. Allowing a state to determine a partnership's capacity to be sued would effectively allow a state to indirectly limit the partnership's liability. *See id.* at 1497. "If, for example, under state law a dissolved corporation lacked the capacity to be sued, any corporation could escape CERCLA liability simply by dissolving before the government brought suit, perhaps to incorporate again after someone else had paid to clean up its hazardous wastes." *Id.* at 1498. In order to avoid such an indirect subversion of congressional intent, state capacity statutes should be preempted to the extent they relieve an otherwise responsible party from liability under CERCLA. *See id.; Chatham Steel,* 858 F.Supp. at 1151–52; *BASF Corp. v. Central Transport, Inc.,* 830 F.Supp. 1011, 1013 (E.D.Mich.1993); *Adolph Coors,* 813 F.Supp. at 1474–75; *Stychno,* 806 F.Supp. at 669; *Traverse Bay,* 762 F.Supp. at 1301; *AM Properties,* 844 F.Supp. at 1012; *Distler,* 741 F.Supp. at 646; *Barton Solvents,* 836 F.Supp. at 761; *but see Levin Metals,* 817 F.2d at 1451.

■ Defendant, however, contends that even if state dissolution laws are

*The Lower Courts Taken a Good Thing Too Far?,* 20 Harv.Envtl.L.Rev. 199, 271–86 (1996).

**10.** Some have argued that had Congress wanted to preempt state capacity laws, it could have used more expansive language such as that found in other federal statutes such as § 514 of the Employee Income Retirement Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. *See e.g. Columbia River Service Corp. v. Gilman,* 751 F.Supp. 1448, 1452 (W.D.Wash.1990) (citing Note, *Corporate Life After Death: CERCLA Preemption of State*

*Corporate Dissolution Law,* 88 Mich.L.Rev. 131, 141–42 (1989)). Even if one accepts this proposition, however, state laws that serve "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" may be preempted. *Michigan Canners & Freezers Assoc., Inc. v. Agricultural Marketing and Bargaining Board,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984). As noted above, application of state capacity laws in this context could thwart Congress's intent under CERCLA. *See Stychno,* 806 F.Supp. at 669. Consequently, preemption is appropriate here.

preempted, it has no assets, and as a "dead and buried" partnership, it cannot be considered a "person" under CERCLA. The Court cannot agree. Whether a partnership or corporation has assets to satisfy a judgment is irrelevant to the antecedent question of whether such an entity can be found liable under CERCLA. *See SCA Services*, 837 F.Supp. at 955; *Allied*, 1990 WL 322940 at *5. "[T]he fact that a defendant may be judgment proof does not affect its capacity to be sued." *Sharon Steel*, 681 F.Supp. at 1499. Furthermore, the fact that a limited partnership has no assets does not necessarily mean that a suit would be a futile gesture. After all, the limited partners of the dissolved partnership may themselves be liable for the debts of the partnership in some instances. *See Redwing Carriers*, 94 F.3d at 1499. In order to establish the existence of those debts, a suit against the partnership might be necessary. Thus, even if the court assumes that WCW is a "dead and buried" partnership under Georgia law, it is still a

"person" that can be subject to suit under CERCLA.[11]

### CONCLUSION

Defendants have failed to offer this Court a valid excuse as to why they should not be liable for response costs in a contribution action brought by the Plaintiff under § 113(f) of CERCLA. The contract between WCW and the Plaintiff makes no reference to environmental or contingent liabilities, and in the absence of a such a reference, this Court is unwilling to assume an agreement on the part of the Plaintiff to assume such liabilities. Furthermore, WCW cannot escape liability under CERCLA by claiming that it is a dissolved partnership whose assets have already been distributed. Accordingly, Defendants' Motion for Summary Judgment is hereby **DENIED**.

---

**11.** Because the Court finds that even a "dead and buried" partnership is a "person" within the meaning of CERCLA, the Court need not address the issue of whether WCW validly dissolved under Georgia law.