A98A1843, A98A1844. EICHELKRAUT et al. v. CAMP et al.
(two cases).
(513 SE2d 267)

SMITH, Judge.

The appeals in this case arise out of two rulings made by the trial court. Case No. A98A1843 addresses the issue of whether the trial court properly granted partial summary judgment to appellee Wayne Camp and others on the narrow issue of whether appellants Patricia Eichelkraut and Jack Nicholson breached a portion of a settlement agreement. In Case No. A98A1844, appellants enumerate as error the trial court's refusal to disburse funds paid into court by

Camp. We find no error, and we affirm.

### Case No. A98A1843

1. As a result of previous litigation between Eichelkraut and Nicholson as plaintiffs and Wayne Camp and others as defendants, the parties entered into a settlement agreement. The agreement includes the following "non-disparagement" clause, which is the subject of this appeal: "The parties agree that henceforth they shall cease and refrain from making any disparaging or defamatory remarks or comments regarding one another, expressly or by implication, including but not limited to any parties' personal or business dealings and reputations."[1]

After the parties executed the settlement agreement, Wayne Camp, among other plaintiffs (collectively referred to as "Camp"), instituted this action against Eichelkraut, Nicholson, and others, making several contentions, including the allegation that Eichelkraut and Nicholson breached the settlement agreement by sending three disparaging letters. Camp moved for partial summary judgment on the narrow issue of whether these letters constituted breach of the non-disparagement clause. The trial court granted the motion, and Eichelkraut and Nicholson appeal. Because we conclude that certain correspondence, admittedly authored by Eichelkraut and edited in part by Nicholson, constituted disparaging comments in violation of the settlement agreement, we affirm.

Eichelkraut authored and mailed a letter to a federal district court judge concerning a bankruptcy matter in which Camp served as trustee. The letter recited that Camp was being investigated by an assistant district attorney for insurance fraud, embezzlement, mail fraud, and racketeering and asked the judge, "Before this information is given to the press, shouldn't you reconsider your choice of Trustee?" She also wrote and mailed a letter to the Georgia Society of Certified Public Accountants, stating in part as follows: "We are writing this letter to alert you to the blatant disregard of professional ethics exhibited by Wayne Camp and Dana Pilgrim, his daughter." The letter went on to accuse Camp of ethical violations in the practice of accounting and stated that a criminal investigation was in

---

[1] The remainder of the non-disparagement clause states the following: "Without limiting the generality of the foregoing, the Camp Affiliates covenant: i) that they shall not state that Eichelkraut and Nicholson were involuntarily terminated from employment with Camp & Associates and CNE; ii) that they shall not state that Eichelkraut or Nicholson engaged in any alleged criminal conduct, particularly any claim of breaking, entering and/or theft upon or about the business premises of Camp & Associates and CNE (except upon questioning by any law enforcement agency or prosecutors in which event the Camp Affiliates shall additionally state that they are disinterested in pursuing any such criminal matters)."

progress. Nicholson reviewed a draft of the letter and made slight editorial changes. Finally, Eichelkraut authored and sent a letter to a journalist stating that Camp was under criminal investigation. Although the letters were anonymous, signed only as "concerned claimant," "concerned citizens," or "concerned professionals," it is undisputed that Eichelkraut authored and sent them and that Nicholson reviewed the letter to the Society of Certified Public Accountants.

These letters, on their faces, were disparaging. In construing contracts, we are bound to ascribe to words "their usual and common signification." OCGA § 13-2-2 (2). "The term, 'disparagement,' is defined in Webster's Third New Intl. Dictionary (1961) as 'diminution of esteem or standing and dignity; disgrace . . . , the expression of a low opinion of something; detraction.' " *City Group v. Ehlers*, 198 Ga. App. 709, 710 (1) (402 SE2d 787) (1991). See also Webster's New Universal Unabridged Dictionary (2nd ed. 1983) (defining disparagement as "anything that detracts or discredits"). Unlike *Ehlers*, where we concluded that the words to which appellant objected were not disparaging as a matter of law, id., it is beyond cavil that the unprompted letters mailed by Eichelkraut and edited in part by Nicholson expressed "a low opinion" of Camp and served to diminish the esteem in which he was held.

Appellants maintain that "[t]he term 'disparagement' in the legal sense contemplates the making of a false statement in order to be actionable" and that because the statements made in the letters were true, they could not have been disparaging. We do not agree. It is true, as argued by appellants, that disparagement is identified as a form of slander or defamation under OCGA § 51-5-4 (a) (4). But this statutory definition of a tort does not dispense with the cardinal rule of contract construction that in interpreting contracts, we must ascertain the intent of the parties. OCGA § 13-2-3. We conclude that the agreement clearly reflects the parties' intent that the non-disparagement clause applied to *all* derogatory communications, whether true or not. As noted by the trial court, the phrasing of the clause itself clearly contemplates a broad definition of the term "disparaging," as it prohibits both "disparaging *or* defamatory remarks or comments." (Emphasis supplied.) Moreover, the parties' intent that the non-disparagement clause included even true statements is clear from the contract language prohibiting certain true statements. For example, in addition to the general prohibition against disparaging or defamatory comments, the clause prohibits statements that Eichelkraut and Nicholson were involuntarily terminated from employment. As aptly argued by Camp, the fact that Eichelkraut was involuntarily terminated does not appear to be disputed.

We note Eichelkraut's affidavit reciting that the parties intended

the settlement agreement to encompass only untrue statements. But this evidence of a parol agreement regarding the meaning of the contract is unavailing, given the unambiguous terms of the contract. "Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Such a contract is the only evidence of what the parties intended and understood by it. Parol evidence is not admissible to contradict or construe an unambiguous contract." (Citations and punctuation omitted.) *Frank v. Fleet Finance*, 227 Ga. App. 543, 546 (1) (b) (489 SE2d 523) (1997).

Appellants also argue that the statements made in the letters were privileged under OCGA § 51-5-7 (2) and (3). But as argued by Camp, the issue of privilege is irrelevant to this appeal, because privilege is a defense to the tort of defamation, not to a breach of contract action.

Finally, appellants argue that summary judgment was erroneously granted because Camp did not produce evidence of special damage as required by OCGA § 51-5-4 (b). This does not necessitate reversal. As argued by Camp, while evidence of special damages may be relevant to the torts of slander or defamation, see, e.g., *Webster v. Wilkins*, 217 Ga. App. 194, 196-197 (2) (456 SE2d 699) (1995), such evidence is not relevant to the issue in this appeal. The trial court entered a ruling only on the narrow issue of whether breach of the non-disparagement clause occurred. The court further "reserve[d] ruling as to any issues relating to damages for the alleged breach since proof must be made that any alleged loss [sustained by Camp] was the proximate result of the breach, and that issue is not before the court at this time." We find no error in the trial court's partial grant of summary judgment to Camp.

*Case No. A98A1844*

2. Appellants enumerate as error the trial court's refusal to disburse funds paid into the court's registry by Camp. Under the terms of the settlement agreement executed during the previous litigation, Camp agreed to pay appellants a substantial sum of money and executed promissory notes for a portion of the amounts owed. When Camp and the other plaintiffs instituted this action, he and the other plaintiffs filed an "application for deposit of funds with court" under OCGA § 9-11-67. This application recited that all payments to date had been made and that Camp was not in default under the promissory notes or security deeds securing payments under the notes but noted that two more payments remained under the terms of the

notes.[2] Camp sought to pay the sums due under the note into the court's registry, arguing that if the complaint was meritorious, he was "entitled to retain and set off the amounts otherwise payable to defendants Nicholson and Eichelkraut pursuant to the settlement agreement and the note and security deeds."

The trial court entered an order permitting Camp to deposit the payments with the clerk of court for deposit into the court's registry. Appellants appeal from the trial court's subsequent refusal to permit disbursement of the funds.

Although appellants contend that OCGA § 9-11-67 did not authorize payment of sums into the registry of the court, we need not reach the issue of the applicability of this statute. The broad powers given to trial courts by OCGA § 15-1-3 (4) to manage the cases over which they preside authorized the trial court to order the funds deposited into the registry. Under OCGA § 15-1-3 (4), every court has the power "[t]o control, in the furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto." See *Courtesy Leasing v. Christian*, 266 Ga. 187 (465 SE2d 443) (1996) (court order directing funds paid into court pending resolution of plaintiff's claims upheld under authority of OCGA § 15-1-3 (4)).

Here, Camp's lawsuit made entitlement to the funds an issue. While appellants claimed entitlement to the funds as payments under the promissory notes and settlement agreement, under the allegations of his complaint, Camp may have been excused from further performance under the agreement by appellants' breach. "[W]here a contract provides that there must be a tender of money or a performance of some obligation, the party bound to make the tender or perform the obligation may be relieved, and the tender and obligation held to have been waived, where the other party to the contract repudiates it, by act or word." (Citations and punctuation omitted.) *TMS Ins. Agency v. Mitchell*, 208 Ga. App. 614, 615 (431 SE2d 391) (1993). Camp's payment of the funds into court may be considered a good faith tender of disputed funds into court, pending resolution of his claims against appellants and their claims against him. Under the broad powers conferred on trial courts by OCGA § 15-1-3 (4), we find no abuse of the trial court's discretion in permitting the funds to be deposited into court and in refusing to disburse the funds pending a final decision on the merits of the parties' claims.

---

[2] The application, filed October 23, 1995, recited that the note and security deed required plaintiffs to pay to Nicholson and Eichelkraut "the sum of $20,721.88 on November 1, 1995 and December 1, 1995, subject to applicable notice of default. Upon making such payments, plaintiffs' financial obligations to Nicholson and Eichelkraut will be fully satisfied."

See *Courtesy Leasing*, supra. Regardless of whether the trial court actually denied disbursement for this reason, a judgment right for any reason will be affirmed. See, e.g., *Precise v. City of Rossville*, 261 Ga. 210, 211 (403 SE2d 47) (1991).

*Judgment affirmed. Johnson, C. J., and Barnes, J., concur.*

## DECIDED MARCH 2, 1999.

*Hartley, Rowe & Fowler, Joseph H. Fowler, Milbree F. Lankford*, for appellants.

*Bondurant, Mixson & Elmore, H. Lamar Mixson, Jill A. Pryor*, for appellees.