FIFTH DIVISION
MCFADDEN, P. J.,
BROWN AND MARKLE, J.J.

NOTICE: Motions for reconsideration must be physically received in our clerk's office within ten days of the date of decision to be deemed timely filed.

https://www.gaappeals.us/rules

October 13, 2023

# In the Court of Appeals of Georgia

A23A0651. SMITH et al. v. MILLSAP et al.

McFADDEN, Presiding Judge.

This appeal is from an order that disburses funds that had been held in the registry of the Gwinnett Superior Court. Those funds had been held on the basis of an attorney's lien filed by the appellants. The lien was filed in litigation in which the appellees were opposing parties, and the appellants had represented one of them. See OCGA § 15-19-14 (b) (providing for an attorney lien "[u]pon actions, judgments, and decrees for money"). The funds were proceeds from a sale of real property that the appellees had agreed to place into the court registry pending the resolution of the litigation between them.

Appellants John Da Grosa Smith and his law firm (collectively, "Smith") had represented appellees Ryan Millsap and associated entities (collectively, "Millsap"

or the "Millsap defendants"). That representation had included the underlying litigation, which had been brought by appellees James Schulz and associated entities (collectively, "Schulz" or the "Schulz plaintiffs") against appellee Millsap.

The Gwinnett Superior Court entered the disbursal order after canceling Smith's attorney lien and after an arbitrator in a separate proceeding had rejected appellant Smith's fees claim against appellee Millsap. The arbitration award rejected Smith's claims in their entirety and sanctioned him with a substantial attorney fees award. But that arbitration award had not been confirmed when the trial court disbursed the funds.

We have jurisdiction. The disbursal order is a final order in this proceeding. It is not moot. And Smith has standing to appeal from it because, in entering the order disbursing the funds, the trial court implicitly denied Smith's pending motion to intervene in this proceeding.

We affirm on the merits. The disbursal order was not an abuse of the superior court's very broad discretion in controlling funds in its registry. And that order mooted all of Smith's remaining claims.

1. *Procedural history.*

This case has a complicated procedural history, including three earlier appeals to this court. Some of that history is described in our opinion in one of those earlier appeals. See *Smith v. Millsap*, 364 Ga. App. 162, 163-164 (874 SE2d 184) (2022) (hereinafter *Smith I*). Because that history is important to our conclusion that the trial court did not abuse his discretion in releasing the registry funds, we set it out in more detail here.

(a) *The Schulz plaintiffs bring the underlying action against the Millsap defendants, which is ultimately referred to arbitration conditioned upon the closing of a real estate transaction.*

On October 22, 2018, the Schulz plaintiffs filed a complaint against Millsap, which they would later amend, in the Superior Court of Gwinnett County. Schulz asserted several causes of action arising from his claims that he and Millsap had entered into a partnership in a movie studio venture involving Blackhall Studios, LLC; that their agreement gave him and his associated entities an interest in Blackhall Studios; and that Millsap and his associated entities had worked together to deprive Schulz of that interest by way of, among other things, transferring real property into two entities — Blackhall Real Estate, LLC and Blackhall Real Estate Phase II, LLC — formed after Schulz had filed his initial complaint.

3

In 2020, the Schulz plaintiffs filed a lis pendens against real property owned by Blackhall Real Estate and Blackhall Real Estate Phase II. This led to a disagreement between Millsap and Schulz in the underlying action about whether Schulz's claims in that action could affect the title to that real property. The lis pendens hampered efforts by Blackhall Real Estate in late 2020 to refinance the real property.

In January 2021, the Schulz plaintiffs and the Millsap defendants entered into an agreement to arbitrate their dispute conditioned upon the closing of a real estate transaction, scheduled for March 22, 2021, involving some of the real property identified in the lis pendens. On March 9, 2021, the trial court entered a stipulated order in the underlying action that, among other things, incorporated the appellees' agreement to arbitrate and referred the case between them to binding, non-appealable arbitration, but retained jurisdiction to take certain actions including entering a final judgment on an arbitration award. The trial court acknowledged that the arbitration was conditioned upon the real estate transaction closing no later than March 26, 2021. If that transaction occurred, then Schulz and Millsap agreed to deposit at least $30 million of the funds resulting from the transaction into the trial court registry for later distribution in accordance with the arbitration award. But if that transaction did not

occur by March 26, then the arbitration reference would be terminated and full jurisdiction over the case between Schulz and Millsap would revert to the trial court.

(b) *A dispute arises between Smith and Millsap, leading to a separate arbitration proceeding between them and Smith's filing of the attorney lien that the trial court would subsequently cancel and that is now before us.*

Around the time that the trial court referred the underlying action to arbitration and shortly before the real estate transaction was scheduled to occur, a dispute arose between Smith and Millsap about Smith's legal representation that led to the instigation of a separate arbitration proceeding between them and Smith's filing of an attorney lien in the underlying action between Schulz and Millsap.

Smith had represented the Millsap defendants in the underlying action since August 2019, and in May 2020 he had become Blackhall Real Estate's chief legal counsel under an employment agreement that included an arbitration provision. But in December 2020 new counsel entered an appearance on behalf of the Millsap defendants in the underlying action and on March 4, 2021, Millsap informed Smith that he did not want Smith to have "directional responsibility for the arbitration" with Schulz.

On March 16, 2021, Smith notified the trial court that he was withdrawing as counsel for the Millsap defendants in the underlying action. That same day, Millsap initiated a separate arbitration proceeding against Smith under Smith's employment contract. The arbitration proceeding between Smith and Millsap addressed Smith's performance under his employment contract and his entitlement to attorney fees from Millsap beyond what that contract provided.

On March 22, 2021, the day the real estate transaction was originally intended to take place, Smith, through counsel, filed a document titled "Attorneys' Lien" in the underlying case between Schulz and Millsap. In that filing, Smith stated that, "as permitted by OCGA § 15-19-14 (e), [he] hereby file[d] this [a]ttorneys' [l]ien for services rendered to [d]efendants in the above case [the action between Schulz and Millsap] and other matters." Among other things, Smith expressly asserted a lien over "the amounts transferred in the closing of any commercial transaction involving [various Millsap-associated entities, including Blackhall Real Estate,] and Ryan Millsap (whether interpleaded into the [c]ourt registry or not). . . ."

Millsap filed an emergency motion to remove the attorney lien, asserting that it was invalid and that its filing had jeopardized the real estate transaction on which the arbitration of the underlying action between Schulz and Millsap depended. At a

6

hearing on that motion, Millsap's counsel contended that the funds to be placed into the court registry upon closing would protect any interest Smith had in attorney fees.

The trial court granted Millsap's motion and canceled the lien on the ground that Smith's filing did not comply with the statutory requirements for an attorney lien, in part because it "state[d] that it [was] for work performed outside the scope of the . . . litigation [between Schulz and Millsap.]" See generally *Smith I*, 364 Ga. App. at 166-167 (1) (a lien under OCGA § 15-19-14 (b) is for work in the case to which the lien is attached). The trial court emphasized that his order was "a ruling on the validity of the [a]ttorney's [l]ien and [was] not a ruling on the merit of any claim for attorney's fees [Smith] may have against one or more of the [d]efendants."

Smith directly appealed from the order canceling the attorney lien in *Smith I*, arguing that he did not have to follow procedures for interlocutory appellate review because the order was collateral to the underlying action.

(c) *The real estate transaction closes, funds are placed in the trial court registry, and the trial court enters a judgment on an arbitration award in the underlying action.*

While the *Smith I* appeal was pending, the real estate transaction closed, $30 million from the transaction was deposited into the trial court registry, and the

7

arbitration of the underlying action between Schulz and Millsap proceeded. On October 21, 2021, a panel of three arbitrators issued a two-to-one decision in favor of Schulz. Among other things, the panel majority "direct[ed] that the sum of $11,336,219.50 be paid to Schulz and that $18,663,780.50 be paid to Millsap from the funds held in the registry of the [c]ourt."

Schulz notified the trial court of the arbitration award and asked the trial court to release those funds from the registry. Millsap moved to vacate the arbitration award and objected to the release of any registry funds until the trial court ruled on that motion. *Smith I*, which challenged the order canceling Smith's attorney lien, was still pending; and by letter, Smith asserted that no registry funds should be released until this court issued an opinion in that appeal.

After a hearing, the trial court issued an order on December 28, 2021 that denied Millsap's motion to vacate the arbitration award, entered a final judgment on that award, and held that the funds would remain in the registry pending a final order from this court in *Smith I*. Although Smith was not a party to the action between Schulz and Millsap, he filed a notice of direct appeal from that order.

(d) *Schulz and Millsap attempt to obtain release of the registry funds.*

In February 2022, both Schulz and Millsap moved the trial court to modify its December order and release the registry funds. Smith challenged the trial court's jurisdiction to do so, given his notice of appeal from that order.

The trial court addressed the registry funds in an April 14, 2022 order, stating:

> There are no issues remaining between the parties to this case except for the disbursal of the $30 million (plus interest) that is being held in the [c]ourt's registry. The only reason the [c]ourt has not yet disbursed the money to the parties is because the [c]ourt has continued to consider any potential effect of [n]onparty Smith's appeal of his cancelled attorney's lien notice. Although the [c]ourt is not required to continue to hold such money in its registry as a result of [n]onparty Smith's pending appeal of [that order], the [c]ourt elected to continue to do so. The [c]ourt notes, however, that it is concerned about the hardships such decision may be causing the parties to this case.

The trial court set a hearing for July 6, 2022 "to address the potential disbursal of the money being held in the [c]ourt's registry, by which time it anticipates [n]onparty Smith's pending appeal to the Georgia Court of Appeals will have been decided." Smith filed a notice of direct appeal from the April 2022 scheduling order, asserting that his earlier notice of appeal from the December 2021 order deprived the trial court of jurisdiction to disburse the registry funds.

9

Over the next month, Smith, although not a party to the case between Schulz and Millsap, was active in that case. He filed briefs and other documents and amended his notices of appeal to have those materials transmitted to this court in his appeals from the March 26, 2021 order canceling his attorney lien in that action, the December 28, 2021 order entering a judgment on the arbitration award in that action, and the April 14, 2022 scheduling order in that action. He asserted that the orders on appeal deprived him of procedural and substantive property rights without due process and asked the trial court not to hold a hearing on the issue of disbursing the registry funds.

(e) *This court rules in Smith's three appeals and Smith moves to intervene in the action between Schulz and Millsap.*

On June 7, 2022, we issued our opinion in *Smith I*, holding that the March 2021 order canceling Smith's attorney lien was not subject to the collateral order doctrine and, therefore, Smith could not directly appeal from it. *Smith I*, 364 Ga. App. at 164-169 (1). So we dismissed his appeal for lack of jurisdiction. Id. at 169 (2). On June 21, 2022, we entered an unpublished order dismissing Smith's other two appeals as interlocutory, noting that the action between Schulz and Millsap remained pending

10

below because the trial court had not yet addressed the disbursement of the registry funds.

On June 23, 2022, Smith moved to intervene in the action between Schulz and Millsap. The trial court held a hearing on July 6. We do not have a transcript of that hearing, but it appears the trial court invited the submission of proposed orders addressing the registry funds and deferred ruling on Smith's motion to intervene until the completion of the separate arbitration between Smith and Millsap. The hearing in that arbitration proceeding was scheduled for the following month and would resolve Smith's claim for fees for work outside of his employment agreement. In later submissions to the trial court, Schulz, Millsap, and Smith continued to argue about whether the trial court was authorized to disburse the registry funds before an award was issued in the attorney fees arbitration. Schulz and Millsap also opposed Smith's motion to intervene, arguing among other things that the motion was untimely.

(f) *Smith receives an unfavorable ruling in the attorney fee arbitration and the trial court releases the registry funds in the underlying case.*

On October 3, 2022, the arbitrator in the attorney fee arbitration proceeding between Smith and Millsap entered an award in which she found, among other things, that Smith had breached contractual and fiduciary duties owed to Millsap and that

11

Smith was not entitled to any attorney fees from Millsap outside of his employment agreement. Instead the arbitrator found Smith liable to Millsap for $1.5 million in punitive damages and stated that a future hearing would be held to determine Smith's liability to Millsap for attorney fees under OCGA § 13-6-11.

On October 7, 2022, Schulz and Millsap filed a joint motion seeking immediate disbursement of the registry funds. The trial court granted that motion on October 11 in an order stating that

> an arbitration award has been entered that finds that [d]efendants' prior counsel John Da Grosa Smith is not entitled to recover any attorney's fees from any party in this action, such that he has no valid claim to any of the funds being held in the [c]ourt registry. And as noted by the Court of Appeals when it dismissed Smith's prior appeals in this action, should it be determined that Smith is not entitled to any fees, his claim of lien "would be irrelevant." *Smith v. Millsap*, [supra, 364 Ga. App. at 168 (1) (b)].

The trial court ordered the clerk of court to immediately disburse the funds to Schulz and Millsap in specified amounts. The trial court did not mention Smith's pending motion to intervene in the action.

Smith immediately filed a notice of appeal from this disbursal order, and the trial court clerk did not disburse the registry funds. In subsequent filings, Millsap and

12

Schulz both argued that Smith's notice of appeal should not prevent the disbursal of the funds. After a hearing on that issue, the trial court entered a further order "specifically find[ing] that supersedeas has not attached in this case" and ordering the clerk of court "to immediately disburse the funds held in the registry as previously ordered."

2. *Appellate jurisdiction.*

Schulz and Millsap argue that we lack appellate jurisdiction for three reasons: because the appeal is not from a final order; because the issues on appeal are moot in light of the award in the separate attorney fee arbitration between Smith and Millsap; and because Smith lacks standing to appeal. We have jurisdiction.

(a) *Appeal from a final order.*

Schulz and Millsap argue that we lack jurisdiction over this direct appeal because it is not from a final order, given that Smith's motion to intervene in the action remains outstanding. "Where there is no final order, a party must comply with the rules for interlocutory appeal, which require obtaining a certificate of review from the trial court and permission from this [c]ourt to bring the appeal. OCGA § 5-6-34 (b)." *Smith I*, 364 Ga. App. at 164 (1) (footnote omitted).

13

But once the trial court ordered that the funds in the registry be disbursed, nothing remained of the case below. The merits of the case had already been determined when, in December 2021, the trial court entered a final judgment on the award in the arbitration between Schulz and Millsap. So although the trial court did not expressly rule on Smith's motion to intervene, the trial court implicitly denied the motion by entering an order that rendered intervention meaningless. See generally *Settendown Public Utility v. Waterscape Utility*, 324 Ga. App. 652 n. 1 (751 SE2d 463) (2013) (trial court's failure to rule on a motion for certificate of immediate review within the time period in which the trial could act to grant such motion meant that the trial court implicitly denied the motion); *Loiten v. Loiten*, 288 Ga. App. 638, 639 (655 SE2d 265) (2007) (recognizing implicit ruling by trial court based on effect of trial court's express ruling). Consequently, nothing remained pending below and the order disbursing funds from the registry was a final order from which Smith could directly appeal under OCGA § 5-6-34 (a) (1).

(b) *Mootness.*

Schulz and Millsap argue that we lack jurisdiction because Smith's claims were rendered moot by the award in separate arbitration proceeding between Smith and Millsap. "Mootness is an issue of jurisdiction and thus must be determined before a

14

court addresses the merits of a claim. When the resolution of a case would be tantamount to the determination of an abstract question not arising upon existing facts or rights, then that case is moot." *In the Interest of M. F.*, 305 Ga. 820 (828 SE2d 350) (2019) (citations and punctuation omitted).

As Schulz and Millsap assert, the arbitrator in the attorney fee arbitration proceeding concluded that Millsap does not owe Smith any attorney fees. This award, if it stands, would render Smith's appeal moot, because Smith's arguments on appeal rest on the premise that Millsap owes him attorney fees.

But there is a possibility that the attorney fee arbitration award will not stand. The parties to this appeal have represented to this court that the award is the subject of a confirmation proceeding. The Georgia Arbitration Code permits a trial court to deny confirmation and vacate an arbitration award under limited circumstances, see OCGA §§ 9-9-12 & 9-9-13 (b), and it permits appeals from such rulings. See OCGA § 9-9-16. Certainly, the possibility of overturning the award is low. "Absent one of the statutory grounds listed in OCGA § 9-9-13 (b), a superior court must confirm an arbitration award [and,] on appeal, this [c]ourt will not reverse an order confirming an award unless the appellant demonstrates that a statutory ground exists." *Gainesville Mechanical v. Air Data*, 350 Ga. App. 614 (829 SE2d 838) (2019)

15

(citation and punctuation omitted). But because a possibility of overturning the award exists, however unlikely, the award does not render Smith's appeal moot. See *Rampersad v. Plantation at Bay Creek Homeowners Assn.*, 362 Ga. App. 329, 332 (1) (868 SE2d 475) (2022) (where an event that ordinarily would render an appeal moot could be "unwound," there remained the possibility that the appellants could benefit from a favorable decision on appeal, so the appeal was not moot).

(c) *Standing.*

Schulz and Millsap argue that we lack jurisdiction because Smith has no standing to appeal, given that Smith is not a party in the action between Millsap and Schulz and the trial court never ruled on his motion to intervene. The rule is that "only a party to the case can appeal from a judgment, or one who has sought to become a party as by way of intervention and has been denied the right to do so." *Thaxton v. Norfolk Southern Corp.*, 287 Ga. App. 347, 349 (1) (652 SE2d 161) (2007) (citation and punctuation omitted). Accord *Barham v. City of Atlanta*, 292 Ga. 375, 376 (1) (738 SE2d 52) (2013). But as discussed in Division 2 (a) above, the trial court did deny Smith's motion to intervene in this case, albeit implicitly. And that denial gave Smith standing to appeal. See *Leventhal v. Post Properties*, 276 Ga. App. 742, 744 (1) (624 SE2d 223) (2005).

3. *Disbursement of registry funds.*

Smith argues that the trial court erred in disbursing the funds in the registry after the arbitrator in the separate proceeding between Smith and Millsap determined that Millsap did not owe Smith any attorney fees. It is true that Smith can still contest and would be able to appeal from confirmation of that arbitration award. Nevertheless we find no error by the trial court.

A trial court has "very broad discretion in controlling funds in the registry of the court[,]" *Jones v. Forest Lake Village Homeowners Assn.*, 312 Ga. App. 775, 776 (720 SE2d 174) (2011) (on motion for reconsideration), and the decision to order funds to be deposited in or disbursed from the court registry falls "[u]nder the broad powers conferred on trial courts by OCGA § 15-1-3 (4)[.]" *Eichelkraut v. Camp*, 236 Ga. App. 721, 725 (2) (513 SE2d 267) (1999). That Code section authorizes a court "[t]o control, in the furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto[.]" OCGA § 15-1-3 (4).

The trial court in this case did not abuse his very broad discretion in his October 2022 order disbursing the funds that Schulz and Millsap had voluntarily placed in the court registry a year and a half earlier. As explained in the procedural

17

history set out above, Schulz and Millsap had agreed to place those funds in the registry while the claims in the action between them were arbitrated. After an arbitration panel issued an award on those claims, the trial court entered a final judgment on those claims in December 2021 but refrained from disbursing the registry funds until after both this court had ruled on Smith's various appeals and the arbitrator in the separate proceeding between Smith and Millsap had issued her award concluding that Smith was not entitled to fees from Millsap. Only then did the trial court proceed to disburse the funds, a decision that was consistent with our earlier observation in *Smith I* that if it was determined "Smith is not entitled to any fees, the lien would become irrelevant." 364 Ga. App. at 168 (1) (b).

It is true, as Smith argues, that the arbitrator's award in the attorney fees arbitration with Millsap was not yet final. But it is clear from the award that the only remaining issue for the arbitrator to determine was the amount of attorney fees, if any, that Smith owed Millsap for stubborn litigiousness under OCGA § 13-6-11. That issue would not affect the arbitrator's determination that Millsap owed Smith no attorney fees.

It is also true, as discussed above in Division 2 (b), that it is still possible that the award in the attorney fee arbitration will be overturned in future proceedings.

18

There is no merit whatsoever to Smith's contention that the trial court's decision to disburse the registry funds in this case somehow "confirmed" the arbitration award in that separate case. The possibility that future proceedings could affect the arbitration award did not strip the trial court of his broad discretion to control the funds in the registry. The trial court could still exercise his power to disburse the funds "in the furtherance of justice[.]" OCGA § 15-1-3 (4). See *Eichelkraut*, 236 Ga. App. at 725 (2).

So under the circumstances of this case, and especially given the high bar Smith would have to meet to overturn the arbitration award in future proceedings, see *Gainesville Mechanical*, 350 Ga. App. at 614, the trial court did not abuse his broad discretion in disbursing the funds. We find no abuse of discretion even assuming, for the sake of argument, that the trial court erred in other rulings, such as the initial decision to cancel Smith's attorney lien or the implicit decision not to permit Smith to intervene in the action between Schulz and Millsap.

4. *Remaining claims.*

In Smith's remaining claims, he challenges the trial court's initial decision to cancel the attorney lien he sought to attach to this case; the trial court's consideration, in deciding to cancel the lien, of evidence relating to an offer of compromise, which

19

Smith asserts was improper under OCGA § 24-4-408; the trial court's implicit denial of Smith's motion to intervene in this case; and the trial court's determination that Smith's filing of a notice of appeal from the order disbursing the registry funds did not prevent enforcement of that order.

In light of our conclusion in Division 3, above, that the trial court did not err in ordering disbursement of the registry funds, Smith's remaining claims are moot, because reversal of those rulings would be of no practical benefit to Smith. See *Howard v. Smith*, 226 Ga. 850, 851 (178 SE2d 159) (1970); *Dean v. City of Jesup*, 249 Ga. App. 623, 624 (2) (549 SE2d 466) (2001); *Atlanta Gas Light Co. v. Ga. Pub. Svc. Comm.*, 212 Ga. App. 575, 580 (2) (442 SE2d 860) (1994).

Reversal of the order canceling Smith's claimed attorney lien, or of the evidentiary ruling pertaining to evidence that Smith asserts the trial court improperly considered in canceling the lien, would be of no practical benefit to Smith at this point because, even if Smith had an attorney lien that was attached to the action between Schulz and Millsap, the final disposition of that action had the effect of extinguishing the lien. See *Howe & Assoc. v. Daniels*, 280 Ga. 803, 804-805 (631 SE2d 356) (2006) (an attorney lien under OCGA § 15-19-14 (b) "arises upon the institution of the suit [to which it is attached] and hence when for any reason the suit

20

is finally disposed of, the lien is discharged") (citations and punctuation omitted). Simply put, the order disbursing the registry funds, which we affirm, marks the conclusion of the case between Schulz and Millsap. Because that case is now over, and final judgment has been entered, there is no longer an action upon which Smith's claimed lien can attach.[1]

The same is true as to the ruling implicitly denying Smith's motion to intervene and the ruling enforcing the order disbursing the registry funds notwithstanding Smith's notice of appeal. Smith could not benefit from being allowed to intervene in the action between Schulz and Millsap because that action has ended. And he could not benefit from a decision by this court that the funds should have remained in the registry pending appeal of the order disbursing them, because we have ruled against Smith on the merits of that order.

*Judgment affirmed. Brown and Markle, JJ., concur.*[1]

---

[1] An attorney may avoid having a lien extinguished upon the final disposition of the action by moving to vacate the final judgment and reinstate the case to prosecute the lien. See *Howe & Assoc.*, 280 Ga. at 806. Smith did not seek to do so.